CATHARINE BROOKS, ADMINISTRATRIX, PLAINTIFF AND DEFENDANT IN ERROR, v. CONSOLIDATED GAS COMPANY OF NEW JERSEY, DEFENDANT AND PLAINTIFF IN ERROR.

Argued November 18, 1903—Decided February 29, 1904.

1. A company transmitting a current of electricity of dangerous power, through wires, to a converter placed by it on the side of a dwelling-house near to a balcony upon the tin roof of a portion of the first story thereof, having a gutter and leaders therefrom to the ground, owes a duty to anyone lawfully using the balcony to take reasonable care to prevent the escape of the current in case of contact with the wires, without fault on his part.

2. The duty required in such case includes the exercise of a reasonable provision as to the possibility and probability of one using the balcony for a lawful purpose coming in contact with the wires.

3. Evidence that the company protected the wires by insulation, commonly used when the converter is installed at the top of a pole, did not require a nonsuit or a direction for a verdict when the evidence disclosed that more effective insulation could have been employed or other protection furnished. Upon such evidence it was a question for a jury whether the company had performed its duty.

4. Upon evidence justifying the inference that plaintiff's intestate went upon the balcony for the purpose of painting the gutter, in the exercise of his duty as caretaker of the house; that he had been warned of the danger of contact with the wires and had replied that he was not afraid of them; that he was shortly afterward found dead or dying, leaning over a balustrade, with a paint brush in his right hand touching the gutter and with his left hand firmly grasping one of the wires which was within easy reach of him. *Held*, that it was not erroneous to refuse to direct a verdict for defendant on the ground of the conduct of deceased, for the evidence did not require the inference that deceased had intentionally grasped the dangerous wire, and a jury might infer that his left hand had been accidentally, by some unintentional movement of it in the prosecution of his work, brought into contact with the wire and made to grasp it convulsively by reason of the strong current.

5. After the trial judge had properly charged that it was the duty of persons using a dangerous agency to exercise a high degree of care to prevent injury to persons who in the exercise of a lawful right might come in contact therewith, he then added: "The usual rule applies, and that is that they are charged with introducing the agency by the use of the best known means and

appliances for so doing." *Held*, that there was no error in this instruction, which imposed no duty but that of inquiring for and selecting the means of safely using the dangerous current of electricity which are best known for that purpose.

On error to the Supreme Court.

For the plaintiff in error, *Edwin A. S. Lewis.*

For the defendant in error, *Samuel A. Patterson.*

The opinion of the court was delivered by

MAGIE,. CHANCELLOR.    This writ of error brings up a judgment of the Supreme Court, affirming a judgment of the Monmouth Circuit Court, entered upon the verdict of a jury finding the defendant company liable for the death of plaintiff's intestate.

The contention here is that the Circuit Court erred in submitting the case to the jury. From the record and bills of exceptions, it appears that the court refused to nonsuit the plaintiff and declined to give a direction for a verdict for the defendant. Exceptions to each ruling were allowed, and under proper assignments of error it is now claimed that the judgment should be reversed.

The argument here asserts error in these respects on two grounds, viz., (1) that there was no evidence sufficient to justify the conclusion that the defendant company was liable to an action for the death of plaintiff's intestate, and (2) that the evidence conclusively. showed that his death was due to his own negligence and lack of care.

The circumstances under' which plaintiff's intestate came to his death, as disclosed by evidence .which the jury might credit, with such reasonable inferences therefrom as the jury might draw, are the following: He was in the employ of one Asiel, and in charge, as caretaker, of Asiel's house, at Long Branch. His employer and family had left the house and the deceased was living, with his family, in the stable on the premises. Among the duties of the deceased, he was

required to watch for and repair leaks in the roofs and shingles of the house. On the day in question he went, accompanied by his young son, upon a balcony, extending over a part of the first story and accessible only from the house. The balcony had a tin floor, with a gutter and leaders therefrom. There was a railing nearly four feet in height, the gutter being on the outside thereof. Deceased engaged in painting the gutter, leaning over the railing. The son was playing on the floor of the balcony. No other person was within observation. Some exclamation from the deceased called the son's attention, and he observed that his father was leaning over the railing, with his paint brush in his right hand in the gutter, while his left hand grasped a wire at the side of the house.

The wire was one by which the defendant company furnished a current of electricity for the lighting of the house. At Mr. Asiel's request, the current had been shut off from the house, but continued to flow through the wire which deceased had in his grasp. The son endeavored to pull his father away, receiving a severe shock himself. Others, who came shortly, found the deceased in the position described by the son. They extricated the body and made efforts to resuscitate him, without result. They noticed that the left hand was severely burned with rubber blisters therein, and that the insulation of the wire which he had grasped was pulled down, exposing the wire for some inches.

It is clear that the inference that plaintiff's intestate was killed by a current of electricity transmitted by the defendant company through the wire in question, which operated to produce injury by passing through his body to the tin floor of the balcony, and thence, by the leaders, to the ground, was one which the jury might justifiably make. But this inference alone would not establish defendant's liability to answer in damages for the death. It must further appear that in transmitting the current through the wire in the condition it then was, the defendant company was negligent in some duty which it owed to the deceased.

The defendant company furnished a current for lighting Asiel's house by an overhead system of wires carried upon poles. In the ordinary course of business a pole near the house would have been furnished with a device called a converter or transmitter, from which the wires would have run to the house. The wires running to and from this instrument, in general, are wound with some insulating device, which, it is conceded by the expert witnesses, would not protect anybody from a shock if the wires were grasped by the hand when the body was in a position to complete the circuit to the ground. Asiel objected to having a pole erected on his grounds, and required the defendant company to put the transmitter upon the side of his house, which the company did. The position in which it was placed was about six or eight inches away from the corner of the projection on the side of which the balcony was. The bottom of the instrument was about at the height of the top of the railing. It was therefore within easy reach of anyone standing on the balcony, or working there, or in the gutter attached thereto.

There was also evidence tending to show that there were insulating devices which would have protected these wires and prevented the escape of the current therefrom. It is obvious, from an inspection of the photograph accompanying the brief presented on the part of the defendant company, that some barrier might have been erected which would have prevented anyone standing on the balcony from reaching or coming in contact with the wires. The contention on the part of the company is that when it had used that form of insulating protection which was usually employed in overhead construction it had done its full duty, and cannot be held responsible because the insulation failed to protect. But, in my judgment, this is too narrow a view of the company's duty. When it placed its converter on the top of a pole fifteen or twenty feet high, to which no one not connected with the company would be likely to have access, the rule of duty contended for would probably be properly applied. But

when it placed its converter on the side of the house, although at the owner's request and with his permission, and in a place where persons on the balcony might come in contact therewith, the rule of duty was obviously more severe. When it sent its dangerous current through the wires thus exposed, it was bound to take such care for the protection thereof as reason required to be done. As was well said by Mr. Justice Garrison, in the Supreme Court, the required care demands more than mere mechanical skill, and includes circumspection and foresight with regard to reasonably probable contingencies. *Anderson* v. *Jersey City Electric Light Co.,* 34 *Vroom* 387.

When it placed its converter in the position indicated, it was bound to consider and foresee the possibility, and the probability, of some one, using the balcony for pleasure, or for working thereon, coming in contact with the wires and receiving injury thereby, and to take such precautions as might be reasonably taken against such results. This duty it owed to every person lawfully using the balcony. Whether the company did take such precautions and exercise such care as the circumstances demanded, was plainly a question for the jury.

There was evidence from which the contributory negligence of deceased might perhaps be inferred, but none so conclusive as would justify an instruction for the defendant. It was shown that deceased had been warned by an employe of the defendant company of the danger in coming in contact with the wires. There was also evidence that a person warned deceased on the morning of his death, and upon learning that he was going to work on the balcony, that the wires were dangerous, and that deceased replied that he was not afraid of them. When first found, the left hand of deceased was firmly clasped upon the wire. If it may be inferred therefrom that deceased deliberately took hold of the wire, either to show that he was not afraid of it or for some other reason, his conduct was negligent, and if such was the only inference possible, a direction for a verdict would have been proper. *Anderson* v. *Jersey City Electric Light Co.,* 35 *Vroom* 664.

But that inference was not a necessary one. Considering the warnings he had received, his declaration that he was not afraid of the wires may be intended to indicate that the work he was about to do would not put him in danger. And a reasonable inference from the circumstances may be drawn that when deceased leaned over the balustrade, engaged in painting the gutter, his left hand may have been placed upon the corner of the house, and by an unexpected slip have been caught in the loop of the wire. Whether, upon such an inference, he was guilty of negligence in thus placing his left hand, was a fair question for the jury.

One other assignment of error has been argued. It was directed to a sentence of the charge of the learned justice, which was excepted to. It was in the following words: "The usual rule applies, and that is that they are charged with introducing the agency by the use of the best known means and appliances for so doing." This followed a statement of the duty of persons using a dangerous agency to exercise a high degree of care to prevent injury to persons who in the exercise of a lawful right come in contact with such agency. Taken in its connection, the particular sentence now urged as erroneous is not deemed to impose upon the defendant company any other duty than that of inquiring for and selecting the means of safely using the dangerous current of electricity which are best known for that purpose. This is familiar law, and the charge in that respect was not injurious to defendant.

No error being found, the judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, DIXON, GARRISON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, GRAY. 9.

*For reversal*—VROOM, GREEN. 2.