**TEXAS PACIFIC COAL & OIL CO. v. GRABNER.   (No. 430.)**

Court of Civil Appeals of Texas.   Eastland.
April 20, 1928.

On Rehearing Sept. 21, 1928.   Further Re-
hearing Denied Nov. 9, 1928.

442

defendant has appealed. While plaintiff's petition is susceptible of the construction that he sought recovery only on the theory of a breach of duty owing by a master to its servant, the honorable Court of Civil Appeals at Waco, upon a former appeal of the case, held that the pleadings and evidence tendered issues proper to be submitted to a jury to determine a question of liability on the theory of a breach of duty by a mine owner to an invitee upon its premises. Grabner v. Texas Pacific Coal & Oil Co. (Tex. Civ. App.) 279 S. W. 550. The relationship of master and servant, we think, is not inconsistent with a duty owing by the master as a mine owner to an employee as an invitee upon some particular part of its premises. For this reason we are inclined to agree with the Waco court. At any rate, since it appears that the pleadings remain the same, we feel justified in exercising an undoubted discretion to treat that interpretation of the cause of action as the law of the case. Upon the same pleadings and practically the same evidence as in this case, the Waco court held that the giving of a peremptory instruction in favor of the defendant was error. That court, after calling attention to the fact that defendant was under obligation to plaintiff as an invitee to use ordinary care for his protection and safety while he remained on the premises in such capacity, and was under obligation to use ordinary care in inspecting the premises to discover the dangerous condition, if any, and prevent plaintiff as an invitee being injured, further held:

"The question as to whether appellee [appellant here] used ordinary care to prevent appellant [appellee here] from being hurt, and whether its failure so to do was the proximate cause of the injury, and whether appellant was guilty of contributory negligence, were all questions of fact which should have been submitted to the jury."

On the last trial of the case, resulting in the judgment from which the present appeal is prosecuted, there was an agreement by which each party had the right to introduce in evidence the testimony transcribed by the stenographer and on file in the case which was given at the former trial. The agreement was applicable to the testimony of all witnesses who were not present at the trial. At the close of the testimony, the court submitted the case to the jury upon special issues, calling for findings (1) as to negligence of the defendant in failing to inspect the roof or overhead of the roadway or entrance into working place No. 4 where the injury occurred; (2) whether or not such negligence, if found to exist, was the proximate cause of the injury and damage; (3) whether plaintiff was guilty of contributory negligence in entering and remaining in the road entry at the time and place of his injury; and (4)

Oxford & Johnson, of Stephenville, and John Hancock, of Fort Worth, for appellant.

Wright Morrow, of Houston, and Wm. C. Morrow and W. C. Wear, both of Hillsboro, for appellee.

FUNDERBURK, J. ■ Gottfried Grabner filed this suit against the predecessor of the Texas Pacific Coal & Oil Company on September 11, 1915, claiming damages for injuries sustained May 12, 1914. From a judgment for plaintiff in the sum of $10,000,

the amount of damages. The verdict of the jury being favorable to the plaintiff, judgment was rendered accordingly.

Appellee insists that, the case having been tried in accordance with the decision of the Court of Civil Appeals at Waco, and the issues having been submitted to the jury, which, according to said decision should be submitted, and the trial being had upon the same pleadings with practically, if not identically the same evidence, the former decision constitutes the law of the case, and should be given controlling effect.

Appellant takes the position that the former decision is not controlling, or, if so, that it is in favor of appellant. On this point appellant calls attention that in the former decision the facts as found by the Court of Civil Appeals from the testimony of plaintiff were:

"That he (plaintiff) did not know exactly what the squeeze was, as he had not seen many of them. He testified that he did not know that rock would fall out of the roof of a mine occasionally after it had a squeeze."

The testimony of plaintiff on the last trial claimed to be different from the former testimony just quoted is as follows:

"I know squeezes often occur in mines. I know that when a squeeze occurs in a mine that there is danger of the rocks falling. I knew that was a squeeze. I could not tell what it is that makes the top fall. * * * I know it does fall."

■■ We do not find in any of plaintiff's testimony in the statement of facts now before us where he states that he did not know that rock would fall out of the roof of a mine occasionally after it had a squeeze, as was stated in the former opinion. But the testimony which it is now insisted is different from the former testimony of the plaintiff was all in the statement of facts in the case before the Waco court, and was introduced from the former record by the defendant under the agreement above mentioned. It is therefore without any force or effect, so far as it is concerned, in showing that there is any difference in plaintiff's testimony in the last trial and the former trial. The statement that plaintiff testified he did not know that rock would fall out of the roof of a mine occasionally after it had a squeeze is apparently in such conflict with the testimony in the same record that he did know that there is danger of the rocks falling that we are inclined to view the statement as inadvertent. As plaintiff, however, testified in person upon the last trial, as well as the former trial, and there is an entire absence of any statement to the effect that he did not know that rock would fall out of the roof of a mine after a squeeze, it is, perhaps, our duty to consider the questions presented by appellant's various propositions claiming that the existence of contributory negligence or as-

sumed risk under the present record is one of law, and that a peremptory instruction in their favor should have been given. No question of "assumed risk" as distinguished from "contributory negligence" is involved. "Assumed risk" is a principle having application only as between master and servant, and not as between the owner of premises and an invitee. We have only to consider then whether the admissions of plaintiff that he knew that, after a squeeze occurred in a mine, there was danger of the rocks falling, and that he knew upon the occasion in question that there was a squeeze and some of the rocks had fallen, are such that as a matter of law he was guilty of contributory negligence in going into and remaining in the room or entry where he was injured. There are certain phases of the relation of plaintiff and defendant as employee and employer proper to be considered.

The evidence shows that there had been a lay-off of four days, but that plaintiff had done everything necessary and proper to be done prior to the lay-off, and at that time there was no indication of a "squeeze." By "squeeze" is meant a settling of the earth, causing portions of the roof to cave in. Gomer Gower, appellant's mine superintendent, testified that the pit boss of each mine was charged with the duty of inspecting the roadway and entries, and, if a dangerous condition was found, to remedy it, and that the cleaning out of the rock was the first thing to be done after a squeeze occurred. The place of injury was in the roadway. David Singleton, a coal digger, testified that, after the miner cleans up his "brushing," his duty ends with the roadway, and that, when a squeeze occurs and throws rock down, it is the duty of the company to have it taken out, either by contract with the miner or by a company man. While these were matters bearing directly on the relation of the parties as employer and employee or master and servant, as said before, they have a bearing in determining the questions of negligence and contributory negligence of the owner of property and an invitee.

When plaintiff came to work after the four-day lay-off, his testimony is, that he went into his entry or room and saw a pile of rock which had either come from the roof or the side. There is no evidence how long he remained in the room, or just how extensive were his observations, but they may have been very casual, as he did not, it seems, then determine whether the fall of rock had come from the roof or the side. He had no duty, then, except the one which he performed, which was to inform appellant's representative that his room was not in condition to permit of his working therein. He went to make this report, and found the pit boss outside. The pit boss came down, and, after inspecting two other rooms, seems to have preceded plaintiff into the room where the injury occur-

red. The testimony is that the pit boss told plaintiff to "come on in here," and, when he came in, asked him to estimate the amount of rock which had fallen, with a view to negotiating with plaintiff to clean up the place under certain rules well known to the parties. There is no testimony showing how long the pit boss was in the room or entry before the plaintiff went in. They may have gone in practically together, but, on the other hand, it is not inconsistent with the evidence that the pit boss may have preceded plaintiff sufficiently long to have made all the inspection which the testimony shows was necessary to definitely determine the existence or not of any immediate danger of a fall from the roof. Witnesses testify that the fact of such immediate danger could be readily ascertained by tapping the roof or walls. The situation then was that it was the admitted duty of appellant to make inspection of the roadways and roof; that this fact was known to plaintiff. The evidence does not clearly show that the danger of an immediate fall could be ascertained by simply looking at the roof. The existence of a squeeze indicated a possible danger, the real existence of which could be determined by some character of percussion or tapping of the roof. There is no evidence that plaintiff made such test. We think, under such circumstances, plaintiff, as invitee, had the right to assume, when he was called into the room, that the proper inspection had been made, and that it was ascertained that there was no immediate danger of a fall. There is no evidence that he did not act under such an assumption.

■ An applicable principle of law is, every person has a right to presume that every other person will perform his duty, and, in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which can come to him only from the violation of duty. It is said in 29 Cyc. 516, that:

"This is especially true where a duty to keep his premises safe rests on defendant by reason of ownership or agreement, or where defendant by his conduct has thrown the person injured off his guard so that the want of diligence was the consequence of defendant's conduct.

"Where the person injured has a right to rely on the care of defendant he will not be negligent in failing to observe the danger."

■ To establish contributory negligence, the burden of proof was upon the defendant, and in the state of the record we think it was a question for the jury to determine, as was done.

■ Appellant presents assignments urging the existence of reversible error in certain arguments of plaintiff's counsel, but we think, with the qualifications made by the court to the bills, no material error is shown. Besides, the bills fail to show that the arguments were not made in response to the arguments of opposing counsel, and are insuf-ficient to show error in this respect. Travelers' Ins. Co. v. Peters (Tex. Civ. App.) 3 S.W.(2d) 568; K. C., M. & O. Ry. Co. v. West (Tex. Civ. App.) 149 S. W. 206.

One of appellant's propositions, however, must be sustained. In connection with the special issue calling for a finding of the jury as to the amount of damages suffered by plaintiff, the court instructed the jury that they could take into consideration in arriving at the amount of damage:

"Such further sum as you may find from the evidence to be reasonable and fair value of the medical services paid and agreed to be paid for by him, which was necessary and proper in the treatment of his injuries, if anything."

■■ Objection was made to this instruction on the ground that there was no proof as to the reasonable and fair value of the medical services paid, and agreed to be paid, by plaintiff, which was necessary, if any, in the treatment of his injuries. The only testimony with reference to the value of medical services was that of plaintiff, wherein he said: "I never run it down to see how much money I have spent for doctors." Appellee insists that the assignment presenting this point should not be considered, because the record does not show that the objection to the charge was made before the court's charge was read to the jury. We have carefully considered this point, and are forced to the conclusion that proper and timely objection was made. The evidence on this is the order of the court appearing at the bottom of the written objections, which reads as follows:

"The foregoing objections were submitted to me in due order, after the introduction of all the testimony, and after having been submitted to opposing counsel is by me overruled, to which action the defendant in open court duly excepted."

The objection to the instruction was as follows:

"Objection is made to Special Issue No. 4 and instructions given in paragraph 11 of the charge in connection with said issue as follows:

"(a) Because there is no proof raising an issue of fact as to the matters submitted in sec. 2 of paragraph 11 of the court's charge given in connection with Issue No. 4."

This refers to the very charge under consideration, and clearly shows objection on the ground that there was no proof raising an issue of fact as to the value or amount paid for medical services. The court's statement that the objections were submitted *in due order*, we think, must be construed to mean before the charge was read to the jury. Otherwise it would not have been in due order. K. C., M. & O. Ry. Co. v. West (Tex. Civ. App.) 149 S. W. 206. That the error is material we think there can be no doubt. American Produce Co. v. Gonzales (Tex. Com. App.) 1 S.W.(2d) 602; Eastern Texas Elec-

tric Co. v. Baker (Tex. Com. App.) 254 S. W. 933.

We have' reached the conclusion, however, that such error, material as it is, does not necessarily require a reversal of the case. In his pleading, plaintiff claims for doctor's and drug bills, a total of $500. The jury could properly have allowed no more. As said by Judge Gaines, with reference to a similar state of facts, it is to be presumed that the jury endeavored to perform their duty, and were competent to do so. G., H. & S. A. Ry. Co. v. Duelin, 86 Tex. 450, 25 S. W. 406.

We think there is ample authority to show that the error in the court's charge in the respect under consideration may be rendered harmless by remittitur of the entire amount of $500 claimed in the pleadings for doctor's and drug bills. G., H. & S. A. Ry. Co. v. Duelin, 86 Tex. 450, 25 S. W. 406; Citizens' Ry. Co. v. Hall (Tex. Civ. App.) 138 S. W. 434; M., K. & T. Ry. Co. v. Warren, 90 Tex. 566, 40 S. W. 6; M., K. & T. Ry. Co. v. Bellew, 22 Tex. Civ. App. 264, 54 S. W. 1079; Fort Worth & D. C. Ry. Co. v. Viney (Tex. Civ. App.) 30 S. W. 252; St. Louis S. W. Ry. Co. v. Haynes (Tex. Civ. App.) 86 S. W. 934.

It may be thought that G., H. & S. A. Ry. Co. v. Wesch, 85 Tex. 593, 22 S. W. 957, holds to the contrary; we are doubtful if it is to be so construed in the light of subsequent opinions by the same judge (Gaines) in the Duelin and Warren Cases, supra. At any rate, the case is distinguishable in a particular of controlling importance, in that there is nothing to show any separate allegation of the amount of the item or items not supported by proof.

The judgment of the trial court will be reversed, and the cause remanded for a new trial, unless within ten days appellee shall file a remittitur of $500, in which case the judgment of the trial court will be accordingly reformed and affirmed; the costs of appeal being taxed against appellee.

HICKMAN, C. J., disqualified and not sitting.

### On Rehearing.

FUNDERBURK, J. ■ Upon rehearing we have concluded that we were in error in holding that the assignment which we sustained, as shown by our original opinion, could be cured by a remittitur. The authorities bearing upon this question do not state the true rule with that degree of consistency and clearness that is to be desired. It is insisted that whether or not an error of the kind under consideration may be cured by requiring a remittitur is to be determined by whether or not the evidence tends to show that a definite amount, if any, was expended or incurred for the particular purpose. Upon mature consideration it occurs to us that this is correct. Our earlier view was that, if a definite amount was claimed, the error could be corrected by remittitur of the entire amount alleged for the particular purpose. We think that the rule may be stated that, whenever a general verdict includes an illegal part, the error can be cured by a remittitur only in case the evidence shows, or tends to show, a definite amount is affected by the illegality, or some amount which, if indefinite, certainly does not exceed a certain sum. That this does not clearly appear from the authorities relied on in our original opinion is quite evident. For instance, in G., H. & S. A. Ry. Co. v. Duelin, 86 Tex. 450, 25 S. W. 406, there was a general verdict for $9,000. Plaintiff testified that he thought his doctors' bills would amount to $1,000, and that, in his opinion, his bill for medicines would be about $500. Although the pleadings made a claim for doctors' bills, it made none for medicines. But plaintiff's opinion that the medicine bill would amount to about $500, was not, it seems, the only evidence on the question, for it is also said:

"It was also shown by other testimony not objected to that his account for drugs was very large although the amount was not stated."

■ There was therefore evidence, it seems, tending to show a definite amount, and also other evidence tending to show a large but indefinite amount. The case can only be made to conform to the rule—if the above be a correct statement of the rule—by assuming that the jury would not, in any event, find an amount in excess of plaintiff's estimate. The proposition is so well established, however, by authority, that a verdict of a jury, based in part upon error, cannot be corrected by a remission of a part thereof, unless the error can be seen to affect only some definite part of the verdict than all the authorities, if they can be harmonized so as to preserve this principle, should be given a construction that will do so. A recognition of this principle of distinguishing and harmonizing the cases is illustrated in Houston Electric Co. v. Green, 48 Tex. Civ. App. 242, 106 S. W. 463; Houston Chronicle v. Wegner (Tex. Civ. App.) 182 S. W. 45; and Dickey v. Jackson (Tex. Com. App.) 1 S.W.(2d) 577.

■ In the case at bar, as pointed out, the evidence tends in no manner to establish any definite amount due for medical services. At the same time the evidence shows that there was, or may have been, something due. There is no way to estimate with certainty whether it would be more or less than $500, the amount claimed in the pleadings. It is therefore not certain that a remittitur of any given amount would cure the error. A recognition of the above as the governing rule requires a remand.

The appellant, in its motion for rehearing, also complains of the omission of this court to discuss in our opinion its assignments based upon the refusal of the court to submit

to the jury questions Nos. B, C, and D, as follows:

Question No. B: "Did Grabner know, at the time he entered his 'working place' on the occasion of his injury, that trouble had occurred therein by falling rock, and that there was danger in said place from falling rock?"

Question No. C: "Would an ordinarily prudent man have known, under all of the facts and circumstances surrounding Grabner at the time he entered his working place, on the occasion of his injury complained of, that there was danger of falling rock?"

Question No. D: "Would an ordinarily prudent man, under all the facts and circumstances surrounding Grabner, have entered his working place on the occasion of his injury?"

■ Perhaps we should have discussed these assignments. Undoubtedly appellant had the right to request, and have the court give, a special issue submitting to the jury, for their finding, such facts as were alleged to constitute contributory negligence on the part of plaintiff, and supported by some evidence. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517.

■ We do not think, however, that the special issues requested and refused, as above set out, would have constituted a proper submission of such issue. Question No. B does not call for the finding of an ultimate issue, but of one or more evidentiary facts. The knowledge of danger, disconnected from any act of plaintiff with reference thereto, certainly would not constitute negligence. A finding of the jury in answer to such question would be determinative of no issue in the case. The same is true of question No. C.

■ The vice in question No. D is that the jury in their consideration are not confined to the facts alleged in the pleadings to constitute contributory negligence. All "the facts and circumstances surrounding Grabner" were not necessarily the particular facts claimed to constitute negligence. Any proper submission of the issue would have confined the jury to only such facts and circumstances, if any, as were alleged to be negligent. Darden v. Denison (Tex. Civ. App.) 3 S.W.(2d) 137; Rosenthal Drygoods Co. v. Hillebrandt (Tex. Civ. App.) 280 S. W. 882; Tyrrell Hdw. Co. v. Orgeron (Tex. Civ. App.) 289 S. W. 1040; Munger Automobile Co. v. American Lloyds of Dallas (Tex. Civ. App.) 267 S. W. 304.

Such are the considerations upon which we overruled these several assignments.

■ The facts alleged to constitute contributory negligence were three: (a) That plaintiff had knowledge of the danger of falling rocks arising from the existence of a squeeze; and (b) that plaintiff, with such knowledge, entered the workroom in the mine where the injury occurred; and (c) that an ordinarily prudent person with such knowledge would not have so entered the room, and therefore plaintiff's doing so was negligence. This is but one issue, although consisting of at least three elements. Such issue should be submitted as a whole and not in parts. St. Louis, S. F. & T. Ry. Co. v. Wilson (Tex. Com. App.) 279 S. W. 808.

For the reasons discussed, the motion for rehearing is granted, the judgment heretofore affirming this case upon the filing of a remittitur is set aside, and the cause is remanded to the trial court for a new trial, in accordance with this opinion.