**WEST TEXAS UTILITIES CO. et al. v. RENNER et al.** *

No. 713.

Court of Civil Appeals of Texas. Eastland.

Sept. 26, 1930.

Rehearing Denied Nov. 7, 1930.

---

*Writ of error granted.

Wagstaff, Harwell, Wagstaff & Douthit, of Abiline, and Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

Ben L. Cox, of Abilene, and W. L. Thornton, John West, and Leachman & Gardere, all of Dallas, for appellees.

**HICKMAN, C. J.**

The appellants are West Texas Utilities Company and Texas Plains Public Service Company, but since, for the purposes of this suit, they are one and the same entity, the opinion will refer to only one appellant, West Texas Utilities Company. Appellant is a distributor of electric current for light and power in the town of McCamey and the surrounding oil fields. It contracted with Mosher Steel & Machinery Company, an independent contractor, to erect an addition, known as a "lean-to," to a building belonging to it and situated near McCamey. The addition was

constructed of sheet iron and steel. Appellee S. V. Renner, was one of the employees of the independent contractor engaged in the erection of the structure. A high line of appellant, carrying 13,000 volts of electricity, passed near the roof of the addition where appellee was at work. This high line was not insulated. In some manner appellee lost his balance while working on the roof of the structure and undertook to regain it by manipulating a metal bar which he held in his hand. In so doing the bar either touched or came in close proximity to the high-voltage wire, and a heavy charge of electricity passed through his body and on through the metal structure into the ground, inflicting upon him serious and permanent injuries. Mosher Steel & Machinery Company, appellee's employer, carried compensation insurance with the Texas Employers' Insurance Association in accordance with the Workmen's Compensation Law, and appellee was paid the benefits to which he was entitled thereunder. This suit was instituted by Renner against appellant for damages on account of the injuries sustained by him, based upon allegations of various grounds of negligence on the part of appellant. The compensation insurer intervened under the provisions of section 6a, art. 8307, R. S., 1925, to recover back the compensation and expenses paid by it on account of said injuries. Appellant in its answer impleaded Mosher Steel & Machinery Company, alleging, in substance, the payment by the compensation insurer to the employee, and alleging that, if any of the acts of negligence charged by the plaintiff should be found to be true, then Mosher Steel & Machinery Company was a joint wrongdoer and joint tortfeasor, and, if the plaintiff was not warned of the danger by his employer, then such employer violated its duty and thereby caused the injuries to plaintiff, "and it would have no contribution against the defendants West Texas Utilities Company and Texas Plains Public Service Company for any sum paid by reason of the injury to plaintiff * * * and by reason of the joint wrong of the Mosher Steel & Machinery Company with defendants, if there was any wrong, which is denied, the intervenor nor plaintiff herein has any right of recovery whatever against the defendants herein, and therefore defendants plead that the said sum of $6820.00 was a complete release of the entire cause of action, and, if not, should be credited on any judgment that might be rendered herein, and that intervenor and plaintiff should recover nothing whatever by reason of their suit in this case." By way of cross-action over and against Mosher Steel & Machinery Company the appellant prayed that it have judgment over and against said company for any judgment that might be rendered against it, on the theory that, if plaintiff was not warned of the dangers, his said employer breached the duty it owed to him.

On motion of Mosher Steel & Machinery Company a peremptory instruction in its favor was given by the court to the jury and verdict was returned and judgment rendered accordingly. The case, as between appellee Renner and appellant, was submitted to the jury on special issues, which, together with the answers thereto, were as follows:

"Special Issue No. 1:

"A. Do you find from a preponderance of the evidence that the West Texas Utilities Company on July 27th, 1927, maintained its high voltage wires in an uninsulated condition at and near the place where the plaintiff was injured? Answer yes or no. Answer: Yes.

"B. If you have answered the foregoing question in the affirmative then you will answer this question: Do you find from a preponderance of the evidence that such maintaining of said high voltage wires in an uninsulated condition at and near the place where the plaintiff was injured, and at the time was negligence on the part of the West Texas Utilities Company? Answer yes or no. Answer: Yes.

"C. If you have answered the above issue in the affirmative then answer this issue: Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the injuries, if any, sustained by the plaintiff Renner? Answer yes or no. Answer: Yes.

"Special Issue No. 2:

"A. Do you find from a preponderance of the evidence that the defendant West Texas Utilities Company was guilty of negligence in failing to cover or protect the high voltage, uninsulated wires, at or near the place where the plaintiff was working with a rubber apron or other similar contrivance? Answer yes or no. Answer: No.

"B. If you have answered the foregoing issue in the affirmative then answer this issue: Do you find from a preponderance of the evidence that such negligence, if any, of the defendant West Texas Utilities Company was a proximate cause of the injuries, if any, suffered by the plaintiff, Renner? Answer yes or no. Answer: No.

"Special Issue No. 3:

"A. Do you find from a preponderance of the evidence that the defendant, West Texas Utilities Company, at the time and on the occasion of plaintiff's injury, was negligent in failing to disconnect or cut off the high voltage current which was transmitted in the wires at and near where plaintiff was injured, if it was, while plaintiff was engaged in his work? Answer yes or no. Answer: Yes.

"B. Do you find from a preponderance of the evidence that such negligence, if any, in failing to cut off or disconnect said current was a proximate cause of the injuries, if any, of the plaintiff? Answer yes or no. Answer: Yes.

"Special Issue No. 4:

"A. Do you find from a preponderance of the evidence that the defendant, West Texas Utilities Company, moved the transmission or electric wires, in question, from a point which was not in close proximity to the building under construction, to a point within close proximity to such building after the work began in which plaintiff was engaged at the time of his injury? Answer yes or no. Answer: Yes.

"B. If you have answered the above issue in the affirmative then answer this issue: Do you find from a preponderance of the evidence that the West Texas Utilities Company was guilty of negligence in moving said wires closer to the building in question, if it did, after plaintiff's work began? Answer yes or no. Answer: Yes.

"C. If you have answered the above issue in the affirmative then answer this issue: Was such negligence, if any, mentioned in the issue just above a proximate cause of plaintiff's injuries, if any? Answer yes or no. Answer: No.

"Special Issue No. 5:

"Was the plaintiff guilty of contributory negligence in permitting the steel rod, which he held in his hand at the time of the injury, to come in contact, if he did, with the high voltage electric wire from which he received the electric shock? Answer yes or no. Answer: No.

"If in answer to either of the special issues numbers one, two, three and four you have found that the defendant was negligent and that such negligence was the proximate cause of plaintiff's injuries, if any, you will answer the following question:

"Special Issue No. 6:

"What amount of money, if paid at this time, would justly and fairly compensate the plaintiff for such injuries, if any, that he may have sustained, which have been proximately caused by such negligence, if any? Answer in dollars and cents. $22,500.00."

Upon this verdict judgment was rendered against appellant for $22,500 apportioned properly between Renner and the intervener, Texas Employers' Insurance Association.

By reference to the special issues above copied it will be observed that appellant was found guilty of two acts which proximately caused appellee's injuries; namely (1st) in maintaining the high voltage wires in an uninsulated condition at and near the place where appellee was injured, and at the time of his injuries; and (2d) in failing to disconnect or cut off the current. We shall not consider the question of whether negligence could be predicated upon a failure of appellant to disconnect its current and thereby suspend its business operations. Under the view which we take of the controlling issues involved, a decision of that question is unnecessary, and that basis of the judgment will not be further noticed.

It is the contention of appellant that it owed to appellee no other duty than to warn him of the dangers which were unknown to him, and, having discharged its full duty by so warning him, liability against it could not be predicated upon its negligence in any of the particulars pleaded by appellee, and its request for a peremptory instruction should have been granted.

Much is said in the briefs of the parties on the subject of warning. The status of the record on that question is as follows: Appellee was warned, and had knowledge otherwise, of the danger of permitting the materials with which he was working to come in contact with the high voltage wire. There is no evidence that he was warned, or had knowledge, of the danger of permitting such materials to come near the wire. Appellee himself testified that he did not know that electric current would arc or grab when a metal substance, connected by conductors of electricity with the ground, comes near it. No issue on the subject of warning was submitted to the jury. Appellant requested an issue as to whether Mosher Steel & Machinery Company warned the appellee, but the request was refused. The notation of the trial judge discloses that same was refused because the uncontradicted evidence showed that he was so warned. We agree with the trial judge that the uncontradicted evidence does disclose that appellee was warned, and had knowledge otherwise, of the danger of coming in contact with the wire, but we do not find that he was warned or had knowledge of the danger of coming near the wire. That issue has not been determined, and the evidence would clearly support a finding that he was not so warned. We do not make any finding on that particular question, because the judgment is in no wise based upon the negligence of appellant in failing to give adequate warning. That was a separate and distinct ground of negligence relied upon by appellee for recovery, and, since no issue was submitted thereon, and none requested by appellee, the same was waived by him. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084. We must, therefore, consider this case just as if appellant had adequately warned appellee, and determine the issue of law sharply drawn by the record as to whether appellant owed to appellee any duty other than to warn him of dangers known to it and not to him.

These undisputed facts must be considered in disposing of the question: Appellee was working in a place of grave danger and peril. This fact was well known to appellant. He was performing work beneficial to appellant, with its knowledge and upon its invitation. His relation to appellant was that of invitee. Galveston-Houston Elec. Ry. Co. v. Reinle, 113 Tex. 456, 258 S. W. 803.

Much has been written as to the duty owing by the owner of premises to those coming thereon by his invitation. The Commission of Appeals in Bustillos v. Southwestern Portland Cement Co., 211 S. W. 929, 931, stated the general rule to be: "The owner or occupant of real property is under no obligation to make it safe for the benefit of trespassers, intruders, or mere licensees coming upon it without his invitation, expressed or implied. If, however, such owner or occupant invites the public or particular members of it to come upon his premises, he owes to such persons the duty to have same in a reasonably safe condition and to give warning of latent or concealed perils."

It will be noticed that this rule places upon such owner the duty, not only to warn of latent or concealed peril, but to have his premises in a reasonably safe condition. This rule was expressly approved by the Supreme Court in an opinion by Justice Greenwood, in the case of Galveston-Houston Electric Railway v. Reinle, 113 Tex. 456, 258 S. W. 803. The rule has been many times applied in cases where the danger is produced by an uninsulated line carrying a high voltage of electricity.

In 14 A. L. R. pages 1024–1030, will be found an exhaustive annotation, with citation and discussion of many authorities from various jurisdictions. From these authorities the author of this annotation deduces the following: "While the terms of stating the measure of duty of the electric company are different, there is a great uniformity in the decisions to the effect that one maintaining a high tension electric transmission line without proper insulation, at places where workmen are likely to come into contact with it to their injury, is liable for the injury."

In 56 A. L. R. pages 1021, 1025, the annotation in 14 A. L. R. is supplemented by the citation of many later cases, and from a consideration thereof the author makes this deduction: "The uniformity noted in the earlier annotation, in the decisions to the effect that one maintaining a high-tension electric transmission line without proper insulation, at places where workmen are likely to come into contact with it to their injury, is liable for the injury, is further manifested by the following recent cases. * * *"

We have considered the cases cited in these annotations, and have concluded that they support the rule imposing the duty, not only to warn, but to use at least ordinary care to have the premises in a reasonably safe condition. The degree of care required must be commensurate with the danger, and, for this reason, many of the authorities announce that the duty is to use the utmost care, others that the duty is to use the highest degree of care. Clearly, we think, he is charged with the duty of using ordinary care.

In the instant case the charge to the jury properly defined negligence. In answer to special issue No. 1 the jury has found that the appellant was guilty of negligence in maintaining the high-voltage uninsulated wires at and near the place where appellee was working. No proposition challenges the sufficiency of the evidence to support the finding, and there was some evidence warranting and requiring the submission of this issue to the jury.

Russell B. Jones, a witness for appellant, testified on cross-examination as follows:

"You can insulate a high line. It can be done, but it would have to be done when the line is built. I do not know how it can be done after the line is built. If I was given that problem to insulate that line, I could insulate it by spending untold sums. I have never known of any case where it was done or reason for it to be done. I have never seen it. It is hard to answer what the untold sum would be.

"It would not cost an untold sum to insulate thirty feet of that line, but it is not done. It could be done. It would cost a great deal to insulate thirty feet. I would say that it would cost into the thousands of dollars to insulate thirty feet. I can't answer how many thousands of dollars it would cost. To ask me what it would cost is not a fair question. I would not know how to make an estimate of that kind unless I consulted the prices of material, etc. I know how much insulation it would take. I do not carry the figures around in my head.

"It would not cost five thousand, fifty thousand or one hundred thousand dollars to insulate thirty feet of that high line. It would not run anything like that. You would have to insulate your three wires. It is a problem to get your line insulated properly, from the mechanical end of it."

He further testified:

"You can even move that line with the current on it.

"You could move that line over. You could move that 13,000 volt line over ten feet. Where it goes in the sub-station, here is a pole (indicating) right here, and here (indicating) is a pole where it goes in the sub-station. You could move that line over and let it shoot in the substation from that angle in-

stead of this angle. It could be done. That could not be done easily. I can not answer how long it would take us to do that."

This evidence alone, without considering the testimony of the other expert witnesses, presented an issue of fact as to whether appellant was negligent in maintaining this uninsulated wire at the place where appellee was working, and we would not be authorized to hold, as a matter of law, that the issue should not have been submitted to the jury. Galveston-Houston Elec. Ry. Co. v. Reinle, supra; Bustillos v. Southwestern Portland Cement Co., supra; McCoy v. Texas Power & Light Co. (Tex. Com. App.) 239 S. W. 1105; Oil Belt Power Co. v. Touchstone (Tex. Civ. App.) 266 S. W. 432; Rucker v. Sherman Oil & Cotton Co., 29 Tex. Civ. App. 418, 68 S. W. 818; Colusa Parrot Min. & Smelting Co. v. Monahan (C. C. A.) 162 F. 276; Stevens v. United Gas & Elec. Co., 73 N. H. 159, 60 A. 848, 70 L. R. A. 119; Thomas v. Wheeling Electrical Co., 54 W. Va. 395, 46 S. E. 217; Lewis' Adm'r v. Louisville Electric Light Co. (Ky.) 50 S. W. 992; McCrea v. Beverly Gas & Elec. Co. 216 Mass. 495, 104 N. E. 365; Philbin v. Marlborough Elec. Co., 218 Mass. 394, 105 N. E. 893; Card v. Wenatchee Valley Gas & Elec. Co., 77 Wash. 564, 137 P. 1047; Geismann v. Mo.-Edison Elec. Co., 173 Mo. 654, 73 S. W. 654, 659; Brooks v. Consolidated Gas Co., 70 N. J. Law, 211, 57 A. 396; Griffin v. United Elec. Light Co., 164 Mass. 492, 41 N. E. 675, 32 L. R. A. 400, 49 Am. St. Rep. 477; Burrows v. Livingston-Niagara Power Co., 217 App. Div. 206, 216 N. Y. S. 516; Pattock v. St. Cloud Public Service Co., 152 Minn. 69, 187 N. W. 969; Lofty v. Lynch-McDonald Const. Co., 215 Mo. App. 163, 256 S. W. 83.

Appellant relies upon Texas Traction Co. v. George (Tex. Civ. App.) 149 S. W. 438, to sustain its contention that it owed no other duty to appellee than to warn him. Standing alone, that case would seem to afford some authority for the contention, but, when considered in the light of the comments made thereon by our Supreme Court in the case of Galveston-Houston Elec. Co. v. Reinle, supra, it has no particular value as an authority in this case. Justice Greenwood, in the last-named opinion, calls attention to the fact that the Court of Civil Appeals in the George Case made an express finding of fact, binding upon the Supreme Court, that the work which George was doing was not dangerous in itself, and could have easily been done without his coming in contact with the wires charged with electricity. That fact finding differs materially from our findings in this case, and accounts for the different conclusions reached.

The contention that a peremptory instruction should have been given because the undisputed facts convict appellee of contributory negligence as a matter of law cannot be sustained. The issue of contributory negli-

gence submitted by the court to the jury was the only ground of contributory negligence pleaded. This ground of negligence consisted of his permitting the material with which he was working to come in contact with the high-voltage line. The court properly refused to submit any other issues on contributory negligence except that pleaded. In his testimony appellee described the accident as follows:

"At the time I was injured I was at the lowest part of the roof. * * * I was over the south wall.

"There were electric wires close to where I was working there. * * *

"The place where I was required to work on that building was something like four feet from this wire. I judge the distance to the wire was about that. * * *

"There was not anything on top of this lean-to to keep you from falling down in it. The jack rafters were across there. The jack rafters carry the roof on the building. The jack rafters was the support for the roof. The jack rafter connects on to this beam. It connects at the top of it. * * *

"I had a rod. We were putting in a tie rod in the second bay. We were putting the last rod in there. I had the last rod in my hand. I lost my balance in some way. I let it come back to gain my balance and came close to that wire. It made a jump contact or something, and I got burned from it.

"When I lost my balance I was passing the rod to my fellow workmen opposite me. * * *

"I had the rod about like this, (indicating) running it up this jack rafter. I lost my balance. I let it come back to gain my balance, like that (indicating) not very far.

"When I lost my balance I did not stop and figure what was going to happen. I did not have time to figure anything. I do not know just how it did occur.

"When I lost my balance no one told me to bring the rod back. I had no thought about bringing it back; I could not say how I came to bring it back. A person falling will do lots of things before he thinks, I suppose; as far as I know. * * *

"I am five feet, five and one-half inches tall. That is my height. I was standing on that beam and that would throw my head to be about twenty feet from the ground. * * * I did not get into that wire on purpose."

We deem it unnecessary to cite any authorities or present any argument supporting our conclusion that, under these facts, we would not be authorized to hold, as a matter of law, that appellee did not conduct himself under the circumstances as an ordinarily prudent person would have done.

It is next contended that a peremptory instruction should have been given, because

appellee assumed the risk incident to the performance of his work near the high-voltage wires. Complaint is also made at the refusal of the court to submit an issue on assumed risk. The doctrine of assumption of risk rests upon an agreement express or implied between a master and his servant. Absent the relation of master and servant, the doctrine has no application. Roscoe, etc., Ry. Co. v. Jackson, 60 Tex. Civ. App. 276, 127 S. W. 872; San Angelo Water Co. v. Baugh (Tex. Civ. App.) 270 S. W. 1101, and authorities there cited; T. P. Coal & Oil Co. v. Grabner (Tex. Civ. App.) 10 S.W.(2d) 441. There are authorities and expressions in other authorities which seem to hold that one not an employee may assume risks known to him, but that view is not in accord with the weight of authority, nor is it in accord with the authority in our own jurisdiction. A state of facts which might present an issue of assumed risk where the relation of employer and employee exists might present an issue of contributory negligence under a different relationship, but does not present an issue of assumption of risk.

In the case of Southern Pacific Co. v. De la Cruz, 228 S. W. 108, 109, the question of the distinction between contributory negligence and assumed risk is given careful consideration by the Commission of Appeals. Decisions by our Supreme Court are analyzed and the analysis justifies the statement contained in that opinion that: "It can be asserted, however, with all confidence, we believe, that probably no courts in the country have been more punctilious or guarded or more exact in expression in drawing the distinction between these two defenses than our own Supreme Court."

In the light of that opinion and the authorities therein cited, and the authorities hereinabove cited, we have concluded that the defense of assumed risk has no proper application to the facts before us, and the contention to the contrary is overruled.

We shall not discuss appellant's fourth proposition. It is based upon an assumption of facts which we are unable to find in the record.

Appellant's fifth proposition is as follows: "There being a right of contribution between joint tort feasors effective under the statutes, and in behalf of the one guilty of passive negligence only against the one guilty of active negligence for full contribution, and the defendants in this case having set up such cause of action over against Mosher Steel and Machinery Company, and it having developed that the plaintiff, S. V. Renner, had released all claims which he might have directly or indirectly against Mosher Steel and Machinery Company, his employer, by accepting the benefits of the policy of Workmen's Compensation insurance, procured by Mosher Steel & Machinery Company, such acceptance on his part of such compensation and the benefits under said policy, operated as a release of any claims against Mosher Steel and Machinery Company growing out of his accident and consequently operated to deprive these defendants of their right to a contribution against said Mosher Steel and Machinery Company, and therefore such acceptance of benefits under the Compensation Act by the said plaintiff should be held to have been a complete release as to these defendants."

Appellee objects to a consideration of this proposition on the ground that it is not germane to any assignment of error filed in the trial court and brought forward in the brief. Appellant claims that the proposition is germane to the assignments complaining of the refusal of the court to give a peremptory instruction. We entertain some doubt as to whether the proposition is germane to any assignment, but have resolved the doubt in appellant's favor and have considered the proposition. It is, we think, without merit. The right of contribution between joint tort-feasors exists where one seeking the right is guilty of passive negligence and the one against whom the right is sought is guilty of active negligence. Appellee's employer, Mosher Steel & Machinery Company, was not charged by the pleading or shown by any of the evidence to be guilty of any active negligence. Appellant therefore failed to plead or establish its right to contribution, even though it should be considered that the provisions of the Workmen's Compensation Law did not affect the rule. Galveston, H. & S. A. Ry. Co. v. Pigott, 54 Tex. Civ. App. 367, 116 S. W. 841; Mosher Mfg. Co. v. E., W. F. & G. Ry. Co. (Tex. Civ. App.) 259 S. W. 253; Ft. Worth Gas Co. v. Bragg (Tex. Civ. App.) 297 S. W. 244; East Texas Public Ser. Co. v. Johnson (Tex. Com. App.) 6 S.W.(2d) 344; Morten Inv. Co. v. Trevey (Tex. Civ. App.) 8 S.W.(2d) 527.

Further, appellee's employer fully protected himself against his own negligence (not amounting to gross negligence) by providing compensation insurance for his employees, and could not be compelled to pay indirectly when no liability existed to pay directly. Appellant had no right of contribution against appellee's employer. It follows, therefore, that, even if appellee had released his employer, such act deprived appellant of nothing.

By various propositions complaint is made of the argument of appellee's attorneys to the jury. Appellee objects to any consideration of these propositions because the bills of exceptions preserving the objections to the argument do not disclose either that there was no evidence to justify the argument, or that there was no argument on the part of the opposing counsel to provoke the

argument complained of. The objection is sustained.

We must presume, in the absence of a showing to the contrary, that counsel confined themselves to the evidence, to legitimate deductions therefrom, and to the argument of opposing counsel. K. C., M. & O. Ry. Co. v. West (Tex. Civ. App.) 149 S. W. 206, 207; Pecos & N. T. Ry. Co. v. Suitor (Tex. Civ. App.) 153 S. W. 185, 191; Travelers' Ins. Co. v. Peters (Tex. Civ. App.) 3 S.W. (2d) 568; T. P. Coal & Oil Co. v. Grabner (Tex. Civ. App.) 10 S.W.(2d) 441; Texas Employers' Ins. Ass'n v. Heuer (Tex. Civ. App.) 10 S.W.(2d) 756; Oilbelt Motor Co. v. Hinton (Tex. Civ. App.) 11 S.W.(2d) 338, 339; Schroeder v. Rosenbaum (Tex. Civ. App.) 21 S.W. (2d) 694; Vincent v. Bell (Tex. Civ. App.) 22 S.W.(2d) 753; Thompson v. Caldwell (Tex. Civ. App.) 22 S.W.(2d) 720.

There is no assignment complaining of the excessiveness of the judgment. The facts well sustain same as to amount. No error of the trial court requiring a reversal of its judgment is presented by appellant's brief. It is therefore our conclusion that the judgment of the trial court should be affirmed, and it is so ordered.