# CHARLESTON.

## Sesler v. Coal Co.

Submitted January 20, 1902.    Decided March 29, 1902.

1. Damages—*Reasonable Care—Premises—Contractor.*
    To one going upon another's premises, not as a trespasser or mere licensee, but by invitation in legal sense, as for instance, an independent contractor going upon such premises to do a work under contract with the owner, the owner owes the duty of ordinary, reasonable care to have and keep his premises in safe condition for such person's work, unless defects be known to such person. (p. 321).

2. Contributory Negligence—*Contractor—Owner.*
    If a contractor goes upon premises of another to perform a contract to do work for the owner and is injured from defect in the premises known, or which by fair care ought to be known to the owner, and unknown, or which by fair care cannot be known to such contractor, the owner is liable; but under the reverse of these circumstances, is not liable. (pp. 322, 323).

3. Personal Injury—*Evidence Irrelevant.*
    In an action for personal injury, evidence that the plaintiff is a married man with young children is irrelevant and incompetent and it is error to admit it. (p. 327).

4. JURY TRIALS—*Evidence Confined to Issue.*

Jury trials should be strictly confined to the issues made and the legitimate facts bearing on them, and the practice of dragging in extraneous matters to influence a jury cannot be too strongly condemned. Nothing outside of the legitimate facts should be introduced to affect the minds of those who are to decide the case. (p. 324).

5. QUESTIONS PROPOUNDED—*Answers—Exceptions.*

When a question is put to a witness and the court refuses to allow it to be answered, if the question does not plainly itself import that the answer will prove a fact material, it must appear by a bill of exceptions what was proposed and expected to be proven, else there is no error apparent. If a question objected to is answered, the answer must be shown, else there is no error apparent. (p. 324).

6. PERSONAL INJURY—*Knowledge—Owner—Promise.*

If the owner of a coal tipple promises a contractor executing a contract for masonry work in repairing the tipple, not to have carpenters throw down old timbers of the tipple from any section of the tipple while the contractor is working at the masonry at a particular section of the tipple, and the contractor goes to another section of the tipple in work connected with his contract, relying upon such promise, and being ignorant that carpenters of the owner of the tipple are still engaged in removing old timbers, and the contractor is injured by a piece of timber being thrown upon him in the work of removal by the carpenters, the owner of the tipple is liable. But in the absence of such promise, the owner would not be liable, if the contractor knew that carpentry work was going on above such other section, though he did not know that the particular work of removing old timbers was being done, if he took no precaution to learn the character of the work being done. (pp. 327, 328).

Error to Circuit Court, McDowell County.

Action by Louis Sesler against the Rolfe Coal & Coke Company. From a judgment for plaintiff, defendant brings error.

*Reversed.*

RUCKER & ANDERSON, R. C. McCLAUGHERTY, and BERNARD McCLAUGHERTY, for plaintiff in error.

T. L. HENRITZE and W. L. TAYLOR, for defendant in error.

BRANNON, JUDGE:

Louis Sesler in an action in the circuit court of McDowell County recovered a verdict and judgment against the Rolfe Coal

& Coke Company for seven thousand dollars and the company has brought the case here.

The first complaint against the judgment is the overruling of a demurrer to the declaration. The declaration contains two counts. The first count alleges that the defendant owned and operated a coal mine and tipple, the tipple being used in unloading mine cars of coal into railroad cars for shipment to market, and that the plaintiff was the servant and employe for hire of the defendant, engaged in repairing the stone foundation of the tipple, and that while so engaged, it was necessary for him to go under the tipple for the purpose of repairing and building the foundation of the tipple; and that it was the duty of the defendant to furnish the plaintiff a safe place for him to work; yet the defendant did not use proper care in providing such safe place, and that the defendant placed the plaintiff under the wood work of the tipple and negligently caused the wood work to be knocked down while the plaintiff was at work in his place of duty as such servant, and negligently caused a large piece of timber of the tipple to fall upon the plaintiff, whereby he was permanently injured, as further specified in the declaration. To this count, as a plain count based on the relation of master and servant, there is no objection made by counsel; the objection goes to the second count. This second count states that the plaintiff entered into a contract with the defendant by which it was agreed that for a certain sum of money the plaintiff was to erect, construct and repair the foundation of the tipple, and then alleges that the plaintiff "thereby became the servant and employe of the defendant for hire and reward, and then and there engaged in the work of the defendant in erecting, constructing and repairing the foundation of the tipple, and while so engaged in the discharge of his duty it became necessary for the plaintiff to go under, upon and about the tipple." The count then avers that: "It became and was the duty of the defendant to furnish for the plaintiff while he was so in its employ, a good, proper, safe and suitable place for him to work, so that he might be secure and safe in all respects from injury against which ordinary care and foresight could avail." The count then avers that the defendant did not use proper care in providing a safe place for the plaintiff to work, but that on the contrary the defendant put the plaintiff to work under the wood-work of the tipple and negligently caused the wood-work

to be knocked down, and negligently and carelessly caused a large piece of the timber of the tipple to fall on the plaintiff, thereby inflicting great injury upon him.

It is urged before us that as this second count states a contract to do work, it created no relation of master and servant, and did not place the defendant under that duty resting on a master for the safety of his servant, namely, the duty to give him a safe place in which to work. What duty by law is due from an employer to one who is an independent contractor to do a specific work? It is not that of a master to a servant. 1 Thomp. on Negl. s. 680. But though this is so, the averment of the declaration that a duty of master to servant rested on the defendant, is merely an averment of matter of law, not of fact, and as a declaration need not, should not, aver matter of law, we treat such averment as harmless surplusage. Hogg, Plead. & Prac. 59. This is not the case of a mere trespasser or licensee going upon the premises of another and receiving hurt, as discussed plainly by JUDGE ENGLISH in *Woolwine* v. *Railroad,* 36 W. Va. 329. Rather does the case fall in that class of cases where one going upon the premises of another, by invitation of that other, and receives hurt. We do not mean one invited merely by courtesy to visit; such a person takes the premises as he finds them. 2 Jaggard Torts, s. 258. By one going upon premises under invitation, I mean invitation in a legal sense. "To come under an implied invitation, as distinguished from the mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must be some mutuality of interests in the subject to which the visitor's business relates, although the particular thing which is the subject of the visit may not be for the benefit of the occupant." 3 Ell. on Railroads, s. 1249; *Plummer* v. *Dill,* 32 Am. St. R. 463; 2 Bailey, Personal Inj. s. 3183. The plaintiff was upon the premises of the defendant at the call of business and was there under legal invitation, and not a trespasser or licensee. So, treating him as an invitee, the question arises, What duty did the company owe him? That very late great work, Thompson's Commentaries on Negligence (2d Ed.) vol. 1, s. 979, says: "It is not necessary to suggest that where a proprietor engages an *independent contractor* to do work upon his premises, the contractor, while executing the work, will be there in pursuance of the invitation

of the proprietor, and the proprietor will, under the principles discussed in this chapter, be under the duty of exercising ordinary or reasonable care, to the end of promoting his safety." In *Barnett* v. *Railroad Co.,* 102 U. S. 577, the syllabus is as follows: "The owner or occupant of land who induces or leads others to come upon it for a lawful purpose is liable in damages to them—they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and he negligently suffered it to exist, without giving timely notice thereof to them or to the public." In *Samuelson* v. *Cleveland Iron Co.,* 43 Am. Reports 456, Judge Cooley uses this language, which seems applicable to this case in the view considered: "If the mine were in an unsafe condition when it was handed over to the contractors, and this was known to the defendant, or by the exercise of proper care ought to have been known, and if in consequence a miner who was brought there in ignorance of the danger was killed, the defendant should be held responsible. Every man who expressly or by implication, invites others to come upon his premises, assumes to all who accept the invitation to do the duty to warn them of any danger in coming, which he knows of, or ought to know of, and of which they are not aware. This is a very just and very familiar principle."

In 26 L. R. A. 524, note, the law is, I think, correctly stated as follows: "With few exceptions, the cases agree in holding that the premises upon which an independent contractor is required to labor for the benefit of the owner must be reasonably safe for the purposes of such labor, so far as freedom from concealed danger is concerned." We may thus say, that if the decision of this case does in fact rest on any duty arising merely from the relation of the parties because of the contract between them, the unsafety of the premises must be such as was known, or by fair care could have been known to the defendant, and was unknown, and by fair care could not have been known to the contractor; for it is very clear that if the plaintiff knew, or by fair care could have known of the work which injured him, he cannot recover. Whart. on Negligence, s. 833. It is well established that if one knows, or by fair care could know of danger threatening him, he cannot encounter that danger, and charge his injury upon the owner of the premises even though that owner be in fault. Such would be even the law between master

and servant. *Davis* v. *Nutlallburg Coal & Coke Company,* 34 W. Va. 500; *Knight* v. *Cooper,* 36 *Id.* 232. Such being the duty of the owner to one upon his premises under legal invitation, it would seem that the second count ought to have gone beyond the mere averment of a contract between the parties, and averred an unsafety and danger in the premises known or knowable to the defendant, and not known or knowable to the plaintiff; in other words, that the work being done by the carpenters in the removal of the wood-work of the tipple was not known, or could not have been by fair care known to the plaintiff.

If we base the count on any peculiar duty growing out of that contract relation, the count is bad. But treating the averment of this contract merely as matter to show that the plaintiff was upon the defendant's premises, not as a trespasser or mere licensee, but by invitation of a business engagement, as the count avers that the defendant carelessly and negligently caused the wood-work of the tipple to be knocked down and a piece of timber to be thrown upon him, the count is good without such additional averment. We have a liberal rule in this respect under which a general charge of negligence is sufficient. *Hawker* v. *Railroad,* 15 W. Va. 628. This count avers no defect in the premises whatever. It does not proceed upon the idea of unsafety inherent in the premises, known or knowable to the defendant and unknown and unknowable to the plaintiff. It does not state any facts showing any peculiar duty, save ordinary care arising out of that contract, or the particulars wherein the duty was broken. It simply states that the plaintiff was lawfully upon the premises, and that the defendant, while the plaintiff was executing his contract in masonry work, by negligence threw down a piece of timber upon the plaintiff. Really, that is the test of this case as made by that count, and in fact, as made by the plaintiff's evidence. I do not see that the existence of that contract made any peculiar relation carrying with it any peculiar duty between the parties. As both the plaintiff and the defendant were lawfully engaged each in his separate work, the question is simply, outside of a promise below mentioned, did the defendant so negligently conduct its carpenter work as to endanger the plaintiff? If so, did the plaintiff, knowing that this work was going on and that it was dangerous, so knowing, did the plaintiff, nevertheless, go on with his work or do any act disregarding the danger from the plaintiff's work and thus as-

sume the risk of danger? If so, the company is not liable. Under these views the second count is good.

The defendant offered to prove that it was a rule of the company to have the carpenter's work proceed on one part of the tipple and the masonry work on another part, so as to save those engaged in the masonry work from injury from timbers falling from above in the process of their removal; but this evidence was objected by the court. If such a rule existed, known to the defendant, and he violated it, the evidence was admissible. *Davis* v. *Nutlallburg Co., supra; Gregory* v. *Railroad,* 37 W. Va. 606.

The plaintiff was permitted to prove that a man hauled stone under that part of the tipple where the carpenters were engaged in work. It seems they were engaged on one part of the tipple and the plaintiff on another part. Was this evidence introduced to show negligence in other respects than as to the plaintiff? To show negligence generally? The evidence was not admissible. It was not shown to be the master's act. But the driver of the wagon is not suing. Suppose the company was negligent in exposing that wagoner, does that show that it was negligent to the plaintiff in any respect? The plaintiff did not receive his injury from hauling stone under that tipple. What had it to do with the plaintiff?

The court erred in admitting a deposition of Sagoda, because there was no evidence to show his death, absence or other circumstance to warrant the admission of the deposition. Code, chapter 130, section 36; Barton L. Prac. 449.

The court refused questions as to whether the plaintiff, in other jobs of work for the company, worked at masonry when the carpenters worked on the tipple above. It seems they ought to be admitted as tending to show that the plaintiff knew of the dangers of so doing and assumed their risk on this occasion. However, the court committed no error herein, for the reason that the questions did not import that certain answers favorable to the plaintiff must be given, and we cannot say whether the defendant was prejudiced from refusal of the questions. Where a question is refused by the court, it ought to be shown what was proposed to be proven, unless the question necessarily imports a particular answer; and if the question is answered against objection, the answer ought to be given; otherwise no reversible error exists. *Union Central Co.* v. *Pollard,* 94 Va.

146; *Jackson* v. *Haught,* 38 W. Va. 236; *Kay* v. *Glade Creek Co.,* 47 W. Va. 467. The plaintiff was a witness in his own behalf and the case turned most materially upon his evidence. He claimed that the defendant's superintendent, Jones, requested him to do the masonry work under that part of the tipple specified in the case as No. 5, in the forenoon, and that he declined to do so, saying that the carpenters were working in removing the old wood work over that part of the tipple, and that Jones then said that he would by noon have all the timbers down which he intended then to take down, and if he should not be able to do so by noon he would keep his hands working at the noon hour so as to finish taking down such timbers, and thus it would be safe for the plaintiff to proceed with the masonry. The plaintiff claimed that, relying upon such promise, he went to work after dinner, and that, needing some plank for scaffolding, he went over from bent No. 5 to bents, specified in the case as Nos. 6 and 7, to get plank for scaffolding, and while there the carpenters knocked down an old timber upon the plaintiff. He claimed that the promise of Jones was that no more timber would be knocked down so as to endanger him and his hands while at work in the afternoon. On the other hand, the defendant claimed that Jones promised the plaintiff to take down before the afternoon all the timbers of bent 5, and that he requested the plaintiff to build the wall for bent 5, and that it was agreed that the masonry should be built that afternoon only there, and the defendant denied that Jones had made any promise to cease from taking down timber elsewhere in the tipple. The defendant claimed that Jones left bent No. 5, where he was entirely safe, as all the timbers had been taken down before dinner from that section of the tipple, and that the plaintiff negligently went from bent No. 5 to a point between 6 and 7, and there remained taking nails out of some old plank, and there received his injury through his own negligence. The defendant claimed that it was distinctly understood between the plaintiff and Jones that the plaintiff was to do masonry work that afternoon only under bent 5. The defendant claimed that whilst its carpenters were at work at bents 6 and 7 the plaintiff well knew the fact, knew that the men were working over those bents, heard their hammers and axes, and saw the chips falling from their work, and that notwithstanding all this, he took the risk of danger and thereby

received his injury. The defendant claimed that it was not necessary for the plaintiff to go there for plank as he could have gotten them elsewhere. The defendant also claimed that the plaintiff, even after he went from bent 5, did not take the precaution to look up to see what the carpenters were doing, and that if he had used this prudence, he would have known that they were removing the timbers. The plaintiff admitted that he did not look up. In short, the defendant placed its reliance upon the negligence of the plaintiff. Under these circumstances counsel for the defendant proposed to ask the plaintiff these questions: "Did you not a few days after the accident, and before you went to the hospital, in your house tell W. H. Walters at Rolfe, that the injury was caused by your own negligence or carelessness, and that if you had stayed where your work was and where you ought to have been that you would not have been injured, or words to that effect? Did you not, in the same conversation, at the same place, say to Mr. Walters that your injury was the result of an accident for which no one was to blame, and if you had stayed where your work required you to be you wouldn't have been hurt, or words to that effect?" The court refused to allow these questions to be answered but proposed to allow the defendant's counsel to ask Walters whether he did not say that if he had remained where his work required him to be he would not have been hurt. It seems that these questions should have been answered as put. They asked for yes or no. Was it not admissible for the defendant to show the plaintiff's admission that no one was to blame for his injury but himself, and that it was due to his own negligence? Would not such admission repel the idea that he was misled by the superintendent's promise to take no more timber down after one o'clock? Would it not be an admission that he knew the danger before risking it? Would it not be an admission by him, he peculiarly knowing all the facts of the situation, that his injury was an accident for which the company was not responsible, and chargeable to his own imprudence? Would it not show that he acted negligently in leaving bent 5 and working elsewhere, and sustain defendant's claim that the plaintiff was only to work at bent 5? The questions were admissible for the double purpose of contradicting the plaintiff and to show admission by the plaintiff himself, and admissible as independent, original evidence.

It is said that the court rejected these questions on the ground that they called for mere expression of opinion; but they did not; they called for statement of fact; they called for self-disserving statement of fact. The offer of the court to allow a question covering part of the ground covered by the questions propounded, did not cover the ground which the defendant was entitled to cover by such proposed questions, which went to the very gist of the case, that of contributory negligence. I think these questions were improperly refused. They were very material questions.

The court erred in allowing plaintiff to prove that he was a married man with three young children. The United States Supreme Court in *Pennsylvania Co.* v. *Roy*, 102, U. S. 451, held: "In such a case the injured passenger being entitled only to compensatory damage, evidence of his poverty, or the number and ages of his children, is irrelevant." This Court has held such evidence improper and its admission erroneous. *Moore* v. *Huntington*, 31 W. Va. 842. It is very readily perceptible that this evidence appealed to human sympathy and tended both to induce a verdict for the plaintiff and to aggravate damages. Where improper evidence is given it is presumed to work injury, unless it very plainly appears not to have done so. *Taylor* v. *B. & O. R. Co.*, 33 W. Va. 39. In *O'Hagan* v. *Dillon*, 76 N. Y. 170, the court well said what ought to be impressed upon trial courts with emphasis: "Jury trials should be strictly confined to the issues made and to the legitimate facts bearing on them, and the practice of dragging in extraneous matters to influence a jury cannot be too strongly condemned. Upon a closely contested question of fact, slight influences may turn the scale, and every rule of propriety and justice demands that nothing outside of the legitimate facts should be introduced to affect the minds of those who are to decide the question."

We will not pass upon the evidence under the motion for a new trial, but will let the case go back to the circuit court to be tried upon the evidence without decision as to its effect by us; but as matter of law pertinent to the case, we will say, that if in fact the defendant's superintendent did promise the plaintiff that he would before one o'clock take down all the old timbers that were to be taken down that day, and that the plaintiff being misled by that promise went from bent 5 to get those plank for the purpose of his work, and relying upon that promise, and not

knowing or having reason to believe that the carpenters were engaged in knocking down old timbers, he would be entitled to recover. If, however, the defendant's superintendent did not make such promise not to take down timbers that afternoon, and did not thus mislead. the plaintiff, and the plaintiff knowing that the carpenter's work was going on, left his proper place of work and went under where the carpenters were at work, and failed to look so as to see what they were doing, he was guilty of contributory negligence and assumed the risk of danger, and under well known principles cannot recover. Though such promise was made, and though calculated to mislead, yet if the plaintiff knew of the dangerous situation and exercised no such precaution as a prudent man should do to save his own life and limb, he could not recover; but if lulled and misled by such promise, relying upon it, he received injury without culpable negligence, he would not be precluded from recovery. *Graham* v. *Newburg Orrel C. & C. Co.,* 38 W. Va. 273.

For reasons above stated we reverse the judgment, set aside the verdict and remand the case for a new trial.

*Reversed.*