SNELLING v. HARPER et al.

No. 5411.

Court of Civil Appeals of Texas. Texarkana.

Feb. 22, 1940.

Rehearing Denied Feb. 29, 1940.

Perkins & Perkins and Thomas Shearon, all of Rusk, for appellant.

Norman & Norman, of Rusk, and Vinson, Elkins, Weems & Francis, of Houston, for appellees.

JOHNSON, Chief Justice.

On or about July 11, 1930, E. B. Snelling entered into a written contract with the State of Texas to completely remodel (except installation of heating, plumbing and wiring) one of the State's buildings at Rusk in Cherokee County. A separate contract was awarded by the State to one J. L. Martin to install the plumbing, heating and wiring. Martin, with consent of the Board of Control, assigned his contract to J. O. Andrewartha. So, Snelling and Andrewartha were independent contractors obligated to perform the respective tasks specified in their separate contracts with the State. The building in question was a two-story brick, about forty years old, formerly a part of the State Penitentiary, now an asylum for the insane, known as the East Texas Hospital. The remodeling was for the purpose of converting this building into a ward for patients and is referred to as the ward building. The north and south walls of the building were 120 feet long, the east and west walls were 52 feet long. The walls were 26 feet high. The north and south walls were 17 inches thick from ground floor up 14 feet to the second-story wall, where there was a set-back of 4 inches, making the second-story wall 13 inches thick and 12 feet high above the first-floor walls. The second-story floor was wood, supported by 2x12 joists, resting on a 2x6 plate, which plate was laid lengthwise of the first-story wall and extended under the second-story wall 2 inches. Thus the top wall rested, as its base, upon 11 inches of brick and 2 inches of said 2x6 plate. The roof rested upon similar joists and plates at top of second-story wall.

On November 7, 1933, Snelling, the contractor in charge of remodeling the building, had removed the roof, joists and plates; and had removed the second-story floor, joists and plates; and had scraped the inside plastering off the walls, and cut 12x17-inch holes, 12 feet apart, at the top of the first-story walls and under base of second-story walls. These holes extended into the walls 9 inches at base of second-story wall. The holes were for the purpose of placing therein reinforced concrete joists. The walls were left unbraced, except such as was rendered by their own strength. One of the side walls had a crack on the inside about 10 feet long. The crack did not show through the plaster on the outside wall. Snelling had also laid the first floor of concrete, and had constructed the forms in which to pour the concrete for the second floor. The forms were made of 1x8 shiplap, supported by concrete pillars and by 2x4-inch jacks. The employees of Snelling were pouring concrete in the forms for the second floor; and J. T. Tannehill, an employee of Andrewartha, was setting thimbles in the concrete being poured. Such thimbles were for passageways for plumbing and heating pipes through the concrete. At this time the walls of the building collapsed and Tannehill was killed. J. L. Cook, Snelling's foreman in

charge of the building, testified that the walls could have been securely braced, and prevented from falling, with little expense and time, but that no inspection was made to determine their strength or whether or not it was necessary to brace them. His testimony was not disputed.

Tannehill was survived by his wife, Mrs. Mary B. Tannehill, two minor daughters, Dorothy Lee and Ruth La Nelle, and by his mother, Mrs. Annie B. Tannehill. Mrs. Mary B. Tannehill was appointed guardian of said two minors. The employees of Andrewartha, including Tannehill, were insured under the Workmen's Compensation Act of Texas, Vernon's Ann.Civ.St. art. 8306 et seq., by Lloyds Casualty Company of New York, which company acknowledged liability and assumed payment of the compensation. It had paid part thereof when it was placed in the hands of a receiver. This suit was filed by Mrs. Mary Tannehill, individually, and as guardian of said two minors, and for Mrs. Annie B. Tannehill, and Lloyds Casualty Company, against E. B. Snelling to recover damages on account of the death of J. T. Tannehill, alleged to have been caused by the negligence of E. B. Snelling, his agents, servants and employees. During pendency of the suit E. B. Snelling died testate July 24, 1932, and Mrs. E. B. Snelling was appointed and qualified as Independent Executrix of his estate. Mrs. Mary B. Tannehill married L. L. Harper, and on July 26, 1937, filed her third amended original petition, joined by her husband, L. L. Harper, making Mrs. E. B. Snelling as Independent Executrix of the Estate of E. B. Snelling, deceased, defendant. The petition, in charging Snelling, the general contractor in charge of remodeling the building, with liability for the death of Tannehill, in substance alleges that Snelling in the performance of his work in repairing the building under his contract with the State negligently removed the roof and second floor when he knew, or by exercise of ordinary care could have known, that the building was old and out of repair, and that the walls were likely to be weakened by age, and by the repairing, unless proper precautions were taken for bracing the walls during repair; that Snelling knew that Andrewartha and his employees, including Tannehill, were rightfully on the building engaged in the performance of their duties of installing the plumbing and heating,

and that Snelling owed them the duty of taking such reasonable and necessary precautions in repairing the building as to protect and insure their safety; that Snelling in repairing the building removed the roof and weakened the side walls in such way that unless they were braced or supported would likely collapse and fall; which was known, or in exercise of ordinary care should have been known to Snelling; and that he was negligent in failing to inspect the soundness of the walls after the roof had been removed; and that Snelling knew, or by use of ordinary care could have known, that the walls were old, weak and insecure, not properly braced and likely to collapse. The foregoing general allegations were followed by specific allegations of negligence on the part of Snelling, his agents, servants and employees: "(a) In not inspecting the walls and structure of said building to determine whether or not they were old, weak, loose and likely to collapse; (b) In not warning the deceased of the old, worn, loose and weakened condition of the walls; (c) In not bracing or otherwise maintaining other adequate supporting devices; (d) In attempting to rebuild the second floor and thereby placing an additional weight upon the walls without bracing or otherwise providing supporting devices; (e) In not making a sufficient test to determine that the said walls were old, loose, insecure and weak; (f) In not furnishing and maintaining a reasonably safe place for deceased, Tannehill, to work; (g) In so conducting the work in the building as to make it dangerous for deceased, Tannehill."

Trial of the case to a jury upon special issues resulted in the following findings: That Snelling, his agents, and employees failed to make a reasonable inspection of the walls and structure of the building to determine whether or not they were old, weak, loose and likely to collapse; and failed to provide and maintain adequate braces or supporting devices to prevent the collapse or falling of said walls; and during the remodeling of said building failed to so keep and maintain it so as to be a reasonably safe place for said Tannehill to perform his work; and that each of said acts was negligence, and a proximate cause of Tannehill's death; that the death of Tannehill was not the result of an unavoidable accident; that Tannehill did not cut into and through

one of the walls; that Tannehill was not warned in time, after the south wall of the building fell, to leave the building before the collapse of the north wall; that failure of Tannehill to leave the building before the collapse of the north wall was not negligence; that failure of Tannehill to leave the building before collapse of the north wall was not a proximate cause of his death; that Mrs. L. L. Harper had sustained damages in the sum of $500; and Dorothy Lee Tannehill in the sum of $2500; and Ruth La Nelle Tannehill in the sum of $3000.

Judgment was rendered for plaintiff against Mrs. E. B. Snelling as Independent Executrix of the Estate of E. B. Snelling, deceased, in accordance with the verdict of the jury. Defendant has appealed.

 By her propositions 1, 2, 3, 5, and 6, appellant presents the contention that the trial court erred in overruling her general demurrer and special exceptions to plaintiff's petition, which demurrer and exceptions are based upon the legal theory that the right of Andrewartha and his employees to be upon the premises was that of a licensee; that since the contracts of Snelling and Andrewartha with the State were separate and independent contracts, and the relation of master and servant not existing between Snelling and Andrewartha, Snelling and his employees engaged in remodeling the building owed to Andrewartha and his employees engaged in installing the plumbing and heating therein, only the duty legally accorded licensees, namely, that of not wantonly or wilfully injuring them. Therefore, it is contended, Snelling and his employees owed no duty of executing their work in such manner as to exercise "reasonable or ordinary care" for the safety of Andrewartha and his employees, including Tannehill; and that since plaintiff only charges Snelling and his employees with failure to exercise reasonable and ordinary care, and not with wantonly or wilfully injuring Tannehill, therefore, it is contended, the petition alleges no cause of action against Snelling. Based upon the same legal theory appellant made like objections and exceptions to the court's charge in submitting the issues, and such objections and exceptions are brought forward in appellant's propositions 8 and 9. The exceptions to the petition and to the charge being based up-

on the same ground will be considered together. We do not think that appellant's contention is sound. Though Snelling may be regarded as the general contractor in charge of the building, the rights of Andrewartha and of Snelling, and their employees, to be upon the premises, in the performance of their respective tasks under their separate contracts with and for the benefit of the owner, were of equal legal dignity. So their classification as to whether they were licensees or invitees is not of controlling importance. However, we think that such contractors would both be properly classified as invitees.

"A license is distinguished from an invitation in that the licensee is on the premises by sufferance only and not by virtue of any business or contractual relationship with or any enticement or inducement to enter held out to him by the owner or occupant, but merely in his own interest and for his own purposes, benefits, convenience and pleasure." 45 C.J. 788.

 Independent contractors, and their employees, upon the premises to do work under contract with the owner are there in a legal sense by invitation of the owner. Montgomery v. Houston Textile Mills, Tex. Com.App., 45 S.W.2d 140; Middleton v. P. Sanford Ross, Inc., 5 Cir., 213 F. 6; Sesler v. Rolfe Coal & Coke Co., 51 W.Va. 318, 41 S.E. 216. The two independent contractors, Snelling and Andrewartha, and their employees, being rightfully upon the premises to perform the particular tasks for the owner as specified in their respective contracts, then what duty, if any, did each contractor and his employees owe to the other contractor and his employees? Did Snelling and his employees owe to Andrewartha and his employees the duty of executing or performing their part of the work with "reasonable and ordinary care" for the safety of Andrewartha and his employees working on the same premises? The question is answered in the affirmative. The rule that each contractor owes to the employees of the other contractor the duty of executing his work with reasonable care for their safety is stated in 38 A.L.R. 471, § 19, supported by the authorities cited in that text. For a particular case in point with the facts here involved, see Lisle v. Anderson, 61 Okl. 68, 159 P. 278, L.R.A.1917A, 128, decided by the Supreme Court of Okla-

226

homa. The same principle of law is decided, on not materially different facts, in St. Louis Expanded Metal Fireproofing Co. v. Dawson, 30 Tex.Civ.App. 261, 70 S. W. 450, by Court of Civil Appeals of Texas, writ refused.

■■. By her fourth proposition appellant asserts that the trial court erred in overruling her special exceptions to appellee's petition which were based upon the contention that Tannehill assumed the risk involved that resulted in his death. Appellee's petition affirmatively discloses that Tannehill was not an employee of Snelling, the general contractor in charge of the building, and that the relation of master and servant did not exist between them. Our courts hold that the defense of assumed risk applies only in cases of master and servant or employer and employee. Ford Motor Co. v. Maddin, 124 Tex. 131, 76 S.W.2d 474; City of Weatherford v. Veit, Tex.Civ.App., 196 S.W. 986, 990; San Angelo Light & Power Co. v. Baugh, Tex. Civ.App., 270 S.W. 1101, 1106; El Paso Printing Co. v. Glick, Tex.Civ.App., 246 S.W. 1076; Texas Pacific Coal & Oil Co. v. Grabner, Tex.Civ.App., 10 S.W.2d 441; Nesmith v. Magnolia Petroleum Co., Tex. Civ.App., 82 S.W.2d 721.

■■ Appellant's seventh proposition presents the contention that the trial court erred in overruling her objections to certain testimony of plaintiff's witnesses Wm. Neal and Joe Pittsford. Neal testified that he had been working for Snelling in the general building contract business from about 1914 to 1930, and that he had worked in remodeling old as well as new buildings, and was working for Snelling in the building in question. After having qualified as an expert, he testified that the cutting of the trenches or grooves in the wall would weaken them; and that it appeared to him that the walls could have been braced. Pittsford testified that he had been engaged in the plumbing business for about fifteen years and had worked for Andrewartha on the building in question; that in his calling he had performed considerable services in remodeling and repairing old buildings; that he had worked on two buildings almost like the one in question. After having qualified as an expert, he gave it as his opinion that the walls could have been braced so as to prevent their falling, and that the removal of the roof weakened the walls. We do not agree with the contention that the testimony of said witnesses did not concern matters of science and skill about which expert testimony may be given. See Decatur Cottonseed Oil Co. v. Belew, Tex.Civ.App., 178 S.W. 607; Corrigan, Lee & Halpin v. Heubler, Tex.Civ. App., 167 S.W. 159. It further appears that if admission of the testimony complained of was error, such error was rendered harmless because appellant without objection permitted appellee to introduce substantially the same testimony by the witness J. L. Cook, and because appellant herself introduced testimony of the same character by her witness John H. Thomas. Hough v. Grapotte, 127 Tex. 144, 90 S.W.2d 1090; 3 T.J. 1032, Sec. 732; Id., p. 1058, Sec. 880.

■■ By special issues No. 11, No. 12 and No. 13, the trial court in his main charge inquired of the jury (a) whether or not the deceased Tannehill cut a hole or trench into or through one of the walls of the building; and (b) if such was negligence; and (c) was such negligence, if any, a proximate cause of his death. The jury answered each of the three questions in the negative. Appellant objected to special issue No. 11, because it did not include "other employees of Andrewartha"; and appellant requested the court to submit to the jury, in lieu of special issue No. 11, appellant's requested special issues inquiring of the jury (a) as to whether Tannehill "or other employees of Andrewartha" cut into and through the walls, and (b) whether such was negligence, and (c) whether such negligence, if any, was a proximate cause of Tannehill's death. The court overruled appellant's objections to the court's charge and refused her said requested special issues. Appellant contends that the rulings mentioned of the trial court were error, and bases the contention upon Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517, and other authorities, holding that a defendant is entitled to have affirmatively and separately submitted to the jury each group of facts pleaded and raised in the evidence which, standing alone, would constitute a complete defense to plaintiff's recovery. We agree with the rule of law declared in the authorities cited, but do not agree that the rule has here been violated. The special issues Nos. 11, 12 and 13, contained in the trial court's main charge, completely submitted the alleged defense of Tannehill's contributory negligence pleaded by appellant. The negligence, if any, of

Tannehill's fellow servants concurring with that of appellant as constituting a proximate cause of the injury, sought to be inquired of by appellant's said requested special issues refused by the court, did not form a defense to Tannehill's suit against appellant, a third party or stranger, not Tannehill's employer. Ft. Worth & D. C. R. Co. v. Mackney, 83 Tex. 410, 18 S.W. 949; St. Louis Southwestern R. Co. v. Swinney, 34 Tex.Civ.App. 219, 78 S.W. 547, writ refused; 30 Tex.Jur. 786, Sec. 113.

Appellant's eighty-fifth assignment of error is stated as her nineteenth proposition, reading: "The court erred in awarding execution in the judgment against the defendant as Independent Executrix of the Estate of E. B. Snelling, Deceased, because there is no pleading or proof as to the solvency or insolvency of the Estate of E. B. Snelling, Deceased."

It was agreed upon the trial of the case that E. B. Snelling died testate July 24, 1932, and that in accordance with his will, duly probated, his widow, Mrs. E. B. Snelling, was thereupon appointed, qualified and is acting as independent executrix of his estate. Appellant's answer was filed July 26, 1937,—more than one year after the probate of the will. There is no allegation or proof that the estate was insolvent or that it owed other debts. The judgment rendered in the particular complained of is sustained by R.C.S., Article 3437, which authorizes any person holding a debt against the estate, after expiration of one year from probate of the will, to enforce it by suit against the executor, and that execution may run against property of the estate in his hands subject to the debt. The rule declared in Etter v. Tuck, Tex. Civ.App., 91 S.W.2d 875, authorizing injunctive relief against a sale of the property upon application and showing that such sale would operate to give such creditor a preference over another creditor of the same or higher class, does not, as contended, warrant a holding that the judgment here rendered is invalid for authorizing issuance of execution.

We have examined the remaining propositions cited in appellant's brief, but do not find any error presented by any of them and they are each respectfully overruled.

The judgment of the trial court is affirmed.