AMOCO CHEMICALS CORPORATION et al., Appellants,

v.

Dorothea Mae SUTTON et al., Appellees.

No. 5004.

Court of Civil Appeals of Texas, Eastland.

April 28, 1977.

Rehearing Denied May 26, 1977.

Mills, Shirley, McMicken & Eckel, Preston Shirley, V. W. McLeod, McLeod, Alexander, Powel & Apffel, Galveston, for appellants.

Ronald D. Krist, Krist, McConnico & Gunn, Houston, for appellees.

RALEIGH BROWN, Justice.

This premises liability case is a consolidation of three suits against Amoco Chemicals Corporation, owner and occupier of the premises, for the deaths of Robert Milton Sutton and Aquiles Salinas caused by their entrance into a nitrogen filled reactor and for personal injuries to Charles Marzka. Sutton and Salinas were employees of Arsco, Inc., a sandblasting and painting contractor under contract with Amoco to sandblast three reactors located in the "ultra-cracker unit" at Amoco's Texas City refinery. Marzka, an employee of Catalyst Services, Inc., another contractor working on Amoco's premises, was injured in attempting to rescue Sutton and Salinas from one of the reactors. New York Underwrit-

ers Insurance Company and Highlands Insurance Company, workmen's compensation carriers for the employers intervened. Amoco, seeking indemnity, impleaded Arsco, Inc., as a third party defendant pursuant to a written contract containing an express indemnity provision. Based on a jury verdict, judgment was rendered against Amoco for the benefit of the survivors of Sutton, Dorothea Mae and Gregory Scott Sutton; the surviviors of Aquiles Salinas, Esperanza and Elizabeth Ann Salinas; Marzka; and intervenors, New York Underwriters Insurance Company and Highlands Insurance Company. Amoco was awarded judgment over and against Arsco for indemnity. Amoco files a limited appeal and Arsco appeals. We reverse and render in part and affirm in part.

Sutton and Salinas met their deaths and Marzka sustained injuries in reactor 101–D, the middle of three reactors known as 100–D, 101–D, and 102–D. The reactors were identical in appearance and size being approximately eighty feet in height, twelve feet in diameter and situated thirty to sixty feet apart. They were joined together at the top by a common catwalk. A temporary portable elevator had been installed by Amoco near 101–D.

The large covers on top of the reactors had been removed by use of a crane in order that workers could gain access to the reactors. Smaller temporary manway covers had not been affixed to the top of either reactor. To enter a reactor, a ladder which reached from the top of the reactor down several floors within the reactor was used.

Mac Flores, a Catalyst foreman, who had worked in reactor 101–D all day, noticed at about 4:00 p. m. small fires erupting in the reactor. At a meeting between Catalyst employees and Amoco employees, attended by Marzka, it was agreed the heat in 101–D was too bad to continue working on it. Catalyst was to bring a life support van the next morning and resume working on 101–D. Such a van is used when the chance of fire is so great that it becomes necessary to work under a nitrogen purge, which removes all oxygen from the air. Steve Tho-

ler, an Amoco employee, came to work at 4:00 p. m. and was instructed to purge 101–D with nitrogen. He did so sometime after 4:00.

Sutton and Salinas having worked a full day shift were requested by their supervisor, James R. Reyer, to work overtime. They returned to the ultracracker unit and went by elevator to the top of the reactors.

Sometime after 4:30 p. m., Amoco employees discovered Sutton and Salinas in reactor 101–D. Marzka and Flores, as requested by Amoco, retrieved Sutton and Salinas. In the process, Marzka's fresh air hose came loose and he was pulled out of the reactor by Flores. Sutton and Salinas were asphyxiated. Marzka's injuries were caused by exposure to an oxygen deprived atmosphere.

Amoco argues the trial court erred in granting judgment for plaintiffs and intervenors because as a matter of law (1) Sutton and Salinas were not invitees when they entered the reactor and thus Amoco breached no duty to them; (2) Amoco was absolved from any and all liability for the deaths of Sutton and Salinas and the injuries to Marzka because J. R. Reyer, the supervisor of Sutton and Salinas had actual knowledge and appreciation of the dangers associated with entering the reactor and such knowledge was imputed to Sutton and Salinas; and (3) Amoco was absolved from liability because Sutton was adequately warned the reactor contained nitrogen and of the dangers associated with entering the reactor under those conditions and since Sutton was the immediate foreman of Salinas such warning was imputed to Salinas.

Amoco concedes Sutton and Salinas were invitees as to the general area of the ultracracker unit. It contends, however, their status on entering reactor 101–D was reduced from that of invitees thereby absolving Amoco of liability.

Considering the matter of who is an invitee, the court in *Texas Power & Light Company v. Holder*, 385 S.W.2d 873 (Tex. Civ.App.—Tyler 1964, writ ref. n. r. e.) said:

"An invitee is defined as a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant on the business of the owner or the occupant or for their mutual advantage. 65 C.J.S. Negligence § 43(1), p. 508.

An implied invitation is one which is held to be extended by reason of the owner or occupant doing something or permitting something to be done which fairly indicates to the person entering that his entry and use of the property are consistent with the intentions and purposes of the owner or occupant, and leads him to believe that the use is in accordance with the design for which the place is adapted and allowed to be used in mutuality of interests. 60 C.J.S. Motor Vehicles § 172, p. 510.

A servant or employee of another person who enters the premises on the business of his master, in which business the master and the owner or occupant have a mutual interest occupies the status of an invitee. *Snelling v. Harper* (Tex.Civ. App.), 137 S.W.2d 222; 60 C.J.S. Motor Vehicles § 174, p. 515."

Amoco points to the rule enunciated in *Burton Construction & Shipbuilding Company v. Broussard,* 154 Tex. 50, 273 S.W.2d 598 (1954):

". . . A person may be an invitee as to certain parts of the premises but not as to others. The rule is stated in 30 Tex.Jur. 863, Negligence, Sec. 180: 'The owner or occupant may be held liable only where it appears that the victim sustained the injury while using a part of the premises which was designed for his accommodation or use. * * * A recovery is not sustainable where the evidence leads to the conclusion that "it could not have been reasonably anticipated" that he would attempt to go to the place in which the injury occurred.' . . ."

The extent of the area included by the invitation is discussed in 62 Am.Jur.2d, Premises Liability, § 46 as follows:

". . . The area of invitation will, of course, vary with the circumstances; it extends to all parts of the premises to which the purpose may reasonably be expected to take the invitee, and to those which are so arranged as to lead him reasonably to think that they are open to him. Otherwise stated, a possessor of land is subject to liability to another as a business visitor for such bodily harm as he sustains while upon a part of the land upon which the possessor gives the injured person reason to believe that his presence is permitted or desired because of his connection with the business or affairs of the possessor, and which as such is held open to the injured person as a business visitor."

■ The test applied to determine whether or not a person is an invitee at the exact place of injury is whether the owner of the premises should have anticipated the presence of someone such as the plaintiffs at that particular place on the premises. *Triangle Motors of Dallas v. Richmond,* 152 Tex. 354, 258 S.W.2d 60 (1953).

■ In the instant case, one of the express purposes for which the Arsco employees were working in the area of the ultracracker unit was to sandblast the three reactors. To accomplish this, entry into each reactor was necessary.

Amoco's safety manual required posting barriers, signs or tags, or blowing a whistle during or before the purge of nitrogen commenced. Amoco operators were to station one or two persons at the catwalk at the top of the reactors to prevent entry of any individuals during purging operations. None of these measures were followed.

The reactors were identical in size and appearance. The decision to purge was made shortly before a shift change, a time when one to two hundred people were working in the area of the ultracracker unit. Amoco knew the dangers of purging operations.

The jury concluded Sutton and Salinas were invitees of Amoco at the time and place of their deaths in reactor 101–D. Under the circumstances presented by the evi-

dence, we cannot say as a matter of law their entry into reactor 101–D was not reasonably foreseeable by Amoco. As occupier of the premises, Amoco owed Sutton and Salinas the duty as stated in *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368 (Tex.1963):

"The 'no duty' doctrine is this: the occupier of land or premises is required to keep his land or premises in a reasonably safe condition for his invitees. This includes a duty of the occupier to inspect and to discover dangerous conditions. *Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853 (1950); *Genell, Inc. v. Flynn,* 163 Tex. 632, 358 S.W.2d 543 (1962). His duty is to protect his invitees from dangers of which he, the occupier, knows, or (because of his duty to inspect) of which he *should* know in the exercise of ordinary care. If there are dangers which are not open and obvious, he is under a *duty* to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof. But if there are open and obvious dangers of which the invitees know, or of which they are charged with knowledge, then the occupier owes them 'no duty' to warn or to protect the invitees. This is so, the cases say, because there is 'no duty' to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof . . . ."

See also: *Adam Dante Corporation v. Sharpe,* 483 S.W.2d 452 (Tex.1972).

■ Amoco contends it is absolved from liability for the deaths of Sutton and Salinas and the injuries to Marzka because the undisputed evidence shows that J. R. Reyer, the supervisor of Sutton and Salinas, had actual knowledge and appreciation of the dangers of entering the reactor. It argues such knowledge was imputed to Sutton and Salinas. Further, Amoco urges Sutton had been adequately warned that reactor 101–D contained nitrogen and of the dangers associated with entering 101–D under those conditions.

The court in *Delhi-Taylor Oil Corporation v. Henry,* 416 S.W.2d 390 (Tex.1967) did state:

". . . While an owner owes a duty to employees of an independent contractor to take reasonable precautions to protect them from hidden dangers on the premises or to warn them thereof, an adequate warning to or full knowledge by the independent contractor of the dangers should and will be held to discharge the landowner's alternative duty to warn the employees."

Amoco points to the testimony of Ike Brandon, A. L. Bucklew and J. R. Reyer to support its argument as to the knowledge and appreciation of the danger by Reyer and Sutton and the warning given to Sutton.

Ike Brandon and A. L. Bucklew were Amoco employees. J. R. Reyer was general foreman for Arsco, which was working under a contract with Amoco that contained an indemnity provision. Arsco is concerned not only with issues relating to indemnity but also with the question of primary liability of Amoco. Each of these witnesses are interested witnesses.

Justice Walker in *Gevinson v. Manhattan Construction Company of Oklahoma,* 449 S.W.2d 458 (Tex.1969) considering the value of the testimony of an interested witness stated the rule as follows:

". . . The general rule is that evidence given by an interested witness, even though uncontradicted, presents an issue to be determined by the trier of fact. This rule is not without exception, however, and conclusive effect may be given to the testimony of an interested witness provided the testimony is clear, direct and positive and there are no circumstances tending to discredit or impeach the same. There is an added reason for recognizing the exception when the opposite party had the means and opportunity of disproving the testimony if it were not true, and failed to do so. On the other hand the basis for

recognizing an exception is weakened somewhat when the testimony is such that it could not readily be contradicted if untrue. See *James T. Taylor & Son, Inc. v. Arlington Ind. Sch. Dist.,* 160 Tex. 617, 335 S.W.2d 371; *Owen Development Co. v. Calvert,* 157 Tex. 212, 302 S.W.2d 640; *McGuire v. City of Dallas,* 141 Tex. 170, 170 S.W.2d 722."

The court in *Papco, Inc. v. Eaton,* 522 S.W.2d 538 (Tex.Civ.App.—Texarkana 1975, no writ) said:

". . . A witness in a case is *interested,* and the credibility and weight to be given such witness' testimony is a question solely for the jury, when the record shows a reasonable basis for the witness harboring a partisan attitude towards the outcome of the case. 98 C.J.S. Witnesses, § 538; Tex.Jur.2d Witnesses, Sec. 374. The testimony of an interested witness only raises an issue for jury determination; it is only when such testimony is 'clear, direct and positive and there are no circumstances in evidence tending to discredit or impeach' the witness that such testimony *must* be given probative effect. *Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company,* 391 S.W.2d 41 (Tex. 1965); Tex.Jur.2d Witnesses, Sec. 373 . . ."

Fact issues having been raised by these interested witnesses, the jury answered Special Issues 3 and 3a as follows:

### "SPECIAL ISSUE 3

Do you find from a preponderance of the evidence that J. R. Reyer, either from his own knowledge or through communications from American Oil personnel, did not have adequate knowledge of the dangerous condition of Reactor 101–D, prior to the deaths of Robert Sutton and Aquilas Salinas?

Instruction: 'Adequate knowledge of the dangerous condition' on the part of J. R. Reyer means that he, J. R. Reyer, actually knew of the condition of Reactor 101–D, i. e., that it was charged with nitrogen gas, and actually and fully appreciated the nature and extent of the danger thereby involved by one who encountered the condition by entry into said reactor.

ANSWER: 'HE DID NOT HAVE ADEQUATE KNOWLEDGE'
OR
'HE DID HAVE ADEQUATE KNOWLEDGE'

ANSWER: *'He did not have adequate knowledge.'*

### SPECIAL ISSUE 3a

Do you find from a preponderance of the evidence that J. R. Reyer, prior to the deaths of Robert Sutton and Aquilas Salinas, acquired knowledge that American Oil Company intended to charge reactor 101–D with nitrogen gas and that such action was imminent and impending, and that J. R. Reyer actually and fully appreciated the nature and extent of the danger that a nitrogen charged reactor presented to anyone who entered therein.

Answer: 'Yes' or 'No'

Answer: *No.*"

We have considered and overrule all points of error presented by Amoco.

Arsco argues the trial court erred in granting indemnity in favor of Amoco against it for the damages arising out of the deaths of Sutton and Salinas and the injuries to Marzka because of the indemnity agreement on the back of work order No. TL–41441. Arsco contends the indemnity agreement was not conspicuous enough to import fair notice to it; the deaths of Salinas and Sutton and the injuries to Marzka were not such as "arising directly or indirectly out of, or in connection with the performance of the contract" as required by work order No. TL–41441; and, the deaths and injuries resulted from the sole negligence of Amoco.

It is undisputed Douglas Hoover, President of Arsco, executed on behalf of Arsco, as contractor, contract form designated as work order No. TL–41441. This instrument on its front side contained the language:

"Instructions to Contractor: If you wish to perform the work described above upon the terms and conditions set forth

on the front and reverse sides hereof, please sign the original and duplicate copies of this form in the space provided in the left hand corner below and return the duplicate copy to us before starting any work hereunder . . ."

Under Terms and Conditions on the reverse side is the following:

"4. Liability and Indemnity: Contractor shall be solely responsible for all materials, equipment and work until the Job is accepted by Company. Contractor shall reimburse Company for, and indemnify Company and hold it harmless from and against any and all loss, costs, damage, expense, claims, suits, and liability on account of any and all damage to, or loss or destruction of any property (including without limitation, the work covered hereunder and the property of Contractor, any subcontractors, and Company) or injury to or death of any person (including, without limitation, employees of Contractor, any subcontractors, and Company) arising directly or indirectly out of, or in connection with the performance of this Contract whether caused by a negligent act or omission of either party hereto, or their employees, or otherwise, except that Contractor assumes no liability for the sole negligent acts of Company, its agents, servants or employees."

■ Hoover's failure to read the indemnity agreement is of no consequence. The court in *Gulf Oil Corporation v. Spence & Howe Construction Company,* 356 S.W.2d 382 (Tex.Civ.App.—Houston 1962), affirmed, 365 S.W.2d 631 (Tex.1963) said:

"Appellee contends also that the indemnity agreement is not binding on it because it did not know this particular form of indemnity was in the purchase order and it should have specifically been called to his attention. There is no suggestion of any fraud, overreaching of any kind or mutual mistake. In the absence of such parties are bound by the provisions of the writing. They are charged with knowledge of what they can know by reading the instrument."

13 Tex.Jur.2d, Contracts § 259 states:

"In the absence of fraud, misrepresentation, or concealment, one who has the capacity to make a contract will be conclusively presumed to have known the purpose of an agreement executed by him, the consideration therefor, and also the meaning and legal effect of the terms used therein. Therefore, if a person signs a written contract with full opportunity to inform himself of its provisions, he will not thereafter be permitted to avoid the agreement on the ground that he was mistaken as to, or ignorant of, its contents. In short, he may not thereafter successfully claim that he believed that the provisions of the contract were different from those plainly set out in the agreement, or that he did not understand the meaning of the language used in the agreement. This principle is especially applicable where a party to a contract has read the instrument or has undertaken to examine it for himself."

The court in *Joe Adams & Sons v. McCann Construction Company,* 475 S.W.2d 721 (Tex.1971) said:

"Texas follows the general rule that an indemnity agreement will not protect the indemnitee against the consequences of his own negligence unless the obligation is expressed in unequivocal terms. It is not necessary for the parties to say, in so many words, that they intend to save the indemnitee harmless from liability for his own wrongs, but it is necessary for that intention to clearly appear when all the provisions of the contract are considered in the light of the circumstances surrounding its execution. This was pointed out in *Spence & Howe Construction Co. v. Gulf Oil Corp.,* Tex.Sup., 365 S.W.2d 631, where we stated that:

'* * * Ordinarily, however, one does not contract against the results of his own negligence. Such agreements, except for insurance contracts, must be regarded as exceptional rather than usual in the majority of business transactions. Before such indemnity contracts may be enforced it must clearly appear that the contracting parties in-

tended that the indemnitor would be held liable for damages resulting from the negligence of the indemnitee.

\* \* \* \* \* \*

In *Mitchell's, Inc. v. Friedman*, 157 Tex. 424, 303 S.W.2d 775, this Court discussed the rule that an indemnity agreement will not protect the indemnitee against the consequence of his own negligence unless the obligation is expressed in unequivocal terms \* \*

\* \* \* \* \* \*

The general rules relating to the construction of contracts are applicable to indemnity contracts. We agree with the statement of the Court of Civil Appeals that, "In construing contracts we must seek the intention of the parties from the language used in the contract. All of the language used is to be considered . . ." ' "

See also: *Sira & Payne, Inc. v. Wallace & Riddle*, 484 S.W.2d 559 (Tex.1972).

In *Fireman's Fund Insurance Company v. Commercial Standard Insurance Company*, 490 S.W.2d 818 (Tex.1972), the court said:

"We have, in fact, progressed toward the so-called 'express negligence' rule as near as is judicially possible without adopting it and thereby requiring in all cases that the parties state, in so many words, that they intend to save the indemnitee harmless from liability for his own negligence. In this connection, it should be clear from our opinion in *McCann*, supra, including its discussion of the leading cases and modifications of our opinion in *Ohio Oil Co. v. Smith*, 365 S.W.2d 621 (Tex.1963), that broad general statements of the indemnity obligation are not sufficient to protect an indemnitee against his own negligence, and that the only presently recognized exceptions are limited to (1) agreements in which one person clearly undertakes to indemnify another against liability for injuries or damages caused by defects in certain premises or resulting from the maintenance or operation of a specified instrumentality as in *Mitchell's, Inc. v. Fried-*

*man,* supra, and *Houston & T. C. R. Co. v. Diamond Press Brick Co.*, 111 Tex. 18, 222 S.W. 204, 226 S.W. 140 (1920); (2) agreements which fall within the peculiar circumstances of the indemnitor having complete supervision over the property and employees of the indemnitee in connection with the performance of the indemnitor's contract as in *Spence & Howe,* supra; and (3) contracts in which there is an unequivocal provision that indemnitor will protect and indemnify the indemnitee from any and all liability by reason of injuries to indemnitor's employees as in *Ohio Oil,* supra."

The contract in the instant case clearly and unequivocally expresses an obligation on the part of Arsco to indemnify Amoco against the consequences of Amoco's negligence except for the sole negligent acts of Amoco, its agent, servant or employees.

■ We disagree with Arsco that the deaths and injuries did not arise "directly or indirectly out of or in connection with the performance of the contract."

The responsibility of Arsco under the contract was to furnish supervision, labor and equipment as requested by Amoco to perform miscellaneous refinery painting and sandblasting at the Texas City refinery. Adherence to safety rules as to unauthorized areas was required. At the time of their deaths, Sutton and Salinas were laboring for their employer, Arsco, under its contract with Amoco. Marzka was injured while attempting to rescue Sutton and Salinas.

■ Applying the general rules relating to the construction of contracts to the indemnity agreement, we determine the intention of the parties from the language used. *Ohio Oil Company v. Smith*, 365 S.W.2d 621 (Tex.1963).

Arsco by agreeing to indemnify for loss "arising directly or indirectly out of or in connection with the performance of the contract" clearly expanded its potential liability by including the term "indirectly."

The term "indirectly" was defined in *Cahen Trust v. United States,* 292 F.2d 33 (7 Cir. 1961) as follows:

". . . The word 'indirectly' means: '* * * circuitous * * *; not leading to aim or result by the plainest course or method or obvious means; * * * roundabout; * * * *not resulting directly from an act or cause but more or less remotely connected with or growing out of it.'* Webster's New International Dictionary * * *" (Emphasis ours)

In *Missouri, K. & T. Ry. Co. of Texas v. Lyons,* 53 S.W. 96 (Tex.Civ.App.—1899), the court said:

". . . The term 'directly' is synonymous with the word 'immediately,' and in this sense denotes closeness of connection, next in order, etc. . . ."

The court in *Lyons* held that the word "directly" has a meaning in strict harmony with that of the word "proximately."

Arsco contracted to indemnify Amoco for losses "arising directly or indirectly out of or in connection with the performance of the contract." We hold the deaths of Sutton and Salinas and the injuries to Marzka resulted from an act or cause if not directly at least indirectly connected with the performance of Arsco's contract with Amoco.

Relying on the indemnity provision that in any event indemnity will not be applicable in the event of injury or death due to "the sole negligent acts of Company, its agents, servants, or employees," Arsco argues that the court erred in granting indemnity to Amoco because the deaths and injuries resulted from the sole negligence of Amoco. In response to special issues, the jury determined that Arsco, its servants, agents or employees were guilty of negligence that was the proximate cause of the deaths of Sutton and Salinas. It also determined the deaths of Sutton and Salinas were not the result of the sole negligent acts of Amoco. Arsco contends there is no evidence of negligence on its part; therefore, the acts of Amoco were the sole contributing cause of the deaths and injuries.

■ The only evidence Arsco gave adequate warnings to its employees, Sutton and Salinas, was presented by an interested witness. J. R. Reyer acknowledge that Amoco used a permit system, in effect on the date of the accident, which meant no one was to enter a reactor without first obtaining a permit. No permits were issued to Sutton nor Salinas.

Applying appropriate rules, we overrule Arsco's argument there is no evidence of negligence on its part. *Martinez v. Delta Brands, Inc.,* 515 S.W.2d 263 (Tex.1974).

We have examined the entire record and overrule Arsco's contention such findings are contrary to the overwhelming weight and preponderance of the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

In its last four points of error, Arsco contends the court erred in awarding Amoco judgment for indemnity over against it for the damages awarded to Marzka because: (1) the jury answered issue 7b that Marzka's injuries were the result of the sole negligent acts of Amoco; (2) contrary to Rule 301, the court failed to conform the judgment to the verdict and in particular to answer 7b; (3) the court failed to grant its motion for judgment after receipt of the verdict; and (4) the court in substance disregarded the jury's answers to 7b without a motion to do so.

We disagree with Amoco's argument Arsco has failed to properly preserve and bring forward for appellate review the contentions urged in these points of error.

Arsco has complied with that portion of Rule 324, T.R.C.P., which states:

"In all cases tried in the county or district court, where parties desire to appeal from a judgment of the trial court, a motion for new trial shall be filed as a prerequisite to appeal; provided that neither a motion for new trial nor an assignment therein shall be a prerequisite to the right to complain on appeal of the action of the court in . . . overruling a motion for judgment on the verdict made by the party who becomes appellant; . . . ."

Amoco urges, if the points are properly before this court, that the jury's answer to issue 7b is immaterial because the jury found the deaths of Sutton and Salinas were not the result of the sole negligent acts of Amoco, its agents, servants or employees and Amoco's liability to Marzka is directly dependent upon and controlled by its liability, if any, to Sutton and Salinas. Amoco contends that negligence proximately causing the deaths of Sutton and Salinas having been established by the jury's answers to special issues against Arsco and Amoco, imposes the obligation of indemnity for Marzka's claim upon Arsco under the terms and provisions of the indemnity agreement; therefore, the answer to 7b is completely immaterial. Amoco concedes that the same result would not be true if Marzka's claim was not directly dependent upon and controlled by the rescue doctrine.

This argument fails to recognize the distinction between Amoco's tort liability to Marzka and Amoco's contract right of indemnity from Arsco.

The court in *Kelley v. Alexander*, 392 S.W.2d 790 (Tex.Civ.App.—San Antonio 1965, writ ref. n. r. e.) said:

"Under the 'rescue doctrine,' one who attempts to rescue another placed in imminent peril by the negligence of the defendant is not to be found guilty of contributory negligence as a matter of law, nor does he assume the risk incident thereto unless he acts in a rash, imprudent or negligent manner. *Sinclair Ref. Co. v. Winder*, Tex.Civ.App., 340 S.W.2d 503, wr. ref.; *Keystone-Fleming Transport, Inc. v. City of Tahoka*, Tex.Civ.App., 315 S.W.2d 656, wr. ref. n. r. e.; *Reddick v. Longacre*, Tex.Civ.App., 228 S.W.2d 264, wr. ref., n. r. e. The basis of this rule is that the defendant negligently created a situation that provoked the rescue effort and the rescuer's resulting injury was something that could reasonably have been foreseen by the negligent defendant and was a natural and probable result of such negligence. *Longacre v. Reddick*, Tex.Civ.App., 215 S.W.2d 404, mandamus overruled; *Shultz v. Dallas Power & Light Co.*, Tex.Civ.App., 147 S.W.2d 914, wr. dism. judgm. correct; 40 Tex.Jur.2d, Negligence, § 117; Restatement of Torts, § 893."

The parties in the instant case stipulated as follows:

"It is agreed by the parties that if the jury in answer to other issues has found that Amoco Oil Company was negligent insofar as the injuries to Aquiles Salinas or Robert Sutton are concerned that this will constitute an affirmative answer to Special Issues One, that if proximate cause of this negligence is required under the rescue doctrine that the answer to such an answered issue will be determined by the jury's answers to other issues earlier in this charge involving proximate cause of the negligence of Amoco Oil Company.

It is further stipulated that the jury would answer Special Issues Two, Three and Five, Yes, and would answer Special Issue Four 'It was not rash and reckless'."

It is stated in 40 Tex.Jur.2d, Rev., Part 2, Negligence, § 82:

"The underlying basis of the rescue doctrine is that the defendant negligently created a situation that provoked the rescue effort, and the rescuer's resulting injury was something that could reasonably have been foreseen by the negligent defendant and was a natural and probable result of such negligence."

We hold the jury's responses to issues other than 7b made Amoco under the rescue doctrine liable to Marzka for his injuries.

Issue 7b addresses itself to the determination of whether Arsco is liable to Amoco on its indemnity agreement. Herein, we have previously held the indemnity agreement clearly and unequivocally expressed an obligation on the part of Arsco to indemnify Amoco against the consequences of its own negligence *except for the sole negligent acts of Amoco, its agents, servant or employees.* (Emphasis ours) Whether Marzka's injuries were the result of the sole negligent acts of Amoco is material to a determination of Amoco's right to indemni-

ty from Arsco for such injuries. The jury having made such determination against Amoco, the court erred in awarding judgment for indemnity over against Arsco for the damages awarded to Marzka.

We have considered all points of error presented by Arsco. We overrule such points except those directed to the indemnity award to Amoco for the damages awarded to Marzka.

That portion of the judgment awarding Amoco indemnity for the damages awarded to Marzka is reversed and rendered that Amoco take nothing. In all other respects, the judgment is affirmed.

The judgment is reversed and rendered in part and affirmed in part.

McCLOUD, C. J., not participating.